

Robert H. Bernstein
973.360.7946
bernsteinrob@gtlaw.com

July 15, 2025

**VIA ECF**

Hon. Mark J. Dinsmore, U.S.M.J.
U.S. District Court, S.D. Ind.
Birch Bayh Federal Bldg. & Courthouse
46 East Ohio Street
Indianapolis, IN 46204

**Re:** *Kimbrough v. Provident Trust Group*, No. 1:25-cv-342

Dear Judge Dinsmore:

  This Firm represents Defendant Provident Trust Group, LLC ("Provident") in this matter. We write pursuant to Local Rule 37-1 to request a conference in connection with Provident's anticipated motion to compel the supervised continuation of Plaintiff Joey Kimbrough's deposition and, alternatively, to dismiss the complaint and for sanctions for Plaintiff's recalcitrant refusal to testify.

  Briefly, by way of background, Plaintiff asserts claims for breach of contract, breach of fiduciary duty, and fraud in connection with Provident's closure in July 2024 of his self-directed individual retirement account. As Provident has explained in earlier filings, it closed Plaintiff's account because Plaintiff failed to pay his annual maintenance fee and ignored three separate notices Provident sent him, expressly warning Plaintiff of the impending account closure. Provident intends to seek summary judgment dismissing this case, as it has successfully done in other instances where customers have asserted such claims. *See, e.g., Murray v. Provident Trust Group, LLC*, 2019 WL 1779567 (D. Nev. Apr. 23, 2019) (dismissing on pleadings claims for breach of contract and breach of fiduciary duty as "directly contradicted" by parties' Custodial Agreement); *Palumbo v. Provident Trust Group, LLC*, 2021 WL 1110797 (N.D.N.Y. Mar. 23, 2021) (granting summary judgment dismissing claims for fraud, breach of contract, breach of fiduciary duty, and negligence) (citing *Murray*).

  On July 8, we attempted to conduct Plaintiff's remote deposition via video conference. A copy of the condensed transcript of that deposition is attached. From the very outset, Plaintiff sought to impede, delay, and frustrate a fair examination in violation of Federal Rule of Civil Procedure 30(d)(2). Throughout, he interposed lengthy argumentative objections, in defiance of Rule 30(c)(2), despite our <u>twice</u> offering to operate under a standing objection. Furthermore, Plaintiff was utterly uncooperative and refused to answer straightforward questions, to the point of refusing even to authenticate his own signature on numerous documents. After roughly two hours of Plaintiff's obstreperous behavior, Provident was left with no alternative but to seek the Court's assistance.

**Greenberg Traurig, LLP | Attorneys at Law**
500 Campus Drive | Suite 400 | Florham Park, New Jersey 07932 | T +1 973.360.7900 | F +1 973.301.8410
ACTIVE 712804442v1

Plaintiff's obstructionism commenced at the very outset of the deposition. A scant few moments in, Plaintiff abruptly announced that he was "going to put a general objection on the record prior to us getting going" and threatened to stop the deposition and contact the Court if he was not permitted to do so. (*See* Transcript at 11:11 to 12:15). Plaintiff's "general objection" included, among other things, (i) vague assertions of his "rights and privileges" under the Rules of Evidence, (ii) accusations that counsel's mere involvement "may violate New Jersey Rules of Professional Conduct 8.4C, which prohibits conduct involving fraud, dishonesty, deceit, or misrepresentation[,]" (iii) objections that counsel "has no firsthand knowledge of the facts at issue[,]" (iv) assertions that "actions by [counsel] and/or others associated with the defendant may constitute theft by deception defined as obtaining something of value through deceitful means[,]" and (v) a recitation of the oath counsel "is believed to have taken [in December 2003] upon admission to the New Jersey bar." (*See* Transcript at 13:2 to 16:17).

Throughout the remainder of his deposition, Plaintiff repeatedly made lengthy, irrelevant, narrative objections, in contravention of Rule 30(c)(2)'s direction that objections "must be stated concisely in a nonargumentative and nonsuggestive manner." Indeed, Plaintiff did this on no fewer than <u>seventeen</u> separate occasions, or once every five minutes on average. (*See* Transcript at 17:22 to 18:8, 18:24 to 19:9, 20:1-11, 24:22 to 25:7, 25:18 to 26:3, 32:8-14, 33:15-25, 40:24 to 41:9, 47:3-13, 50:2-12, 53:6-13, 55:9-19, 58:13 to 59:1, 64:6-16, 73:9-23, 75:13-23, and 79:6-16). Again, Plaintiff did this despite counsel <u>twice</u> offering to operate under a standing objection. (*See* Transcript at 21:9-22, 50:14-19). Plaintiff made it abundantly clear that he rejected that offer because his intention was to unduly prolong the process:

> Q. Mr. Kimbrough, I understand your objection to some of my questions. It's suffic[ient] just to simply object to form. We don't need to have a lengthy read objection every single time or this is going to take us quite some time.
>
> A. I've got all the time in the world, counsel. I don't mind, I honestly don't.
>
> Q. Well, I have no intention of spending all the time in the world. So I would ask that you please simply object to the form. And if you are going to not answer the question, let me know without the 30-second read-on, please.
>
> A. I will answer every question that you ask, but I will read those objections before I answer anything.
>
> (*See* Transcript at 20:15 to 21:8).

Plaintiff asserted these lengthy and frivolous objections to such rudimentary questions as (i) "What's your highest level of education?" (*see* Transcript at 17:20 to 18:8); (ii) "And from what institution did you receive" a master's degree (*see* Transcript at 18:22 to 19:9); and (iii) "What is the nature of the business in which [Plaintiff's company] JMC Property Group is in?" (*see* Transcript at 25:16 to 26:3).

Furthermore, Plaintiff refused to provide direct answers to even the most straightforward questions. This was particularly egregious in connection with authenticating documents relating to his Provident self-directed individual retirement account. Plaintiff repeatedly objected that the documents had not been authenticated prior to his deposition. He claimed he could not identify his own signature. He refused to either confirm or deny whether he had even received certain documents.

> Q. When you say you have concerns about the authentication of certain exhibits, do you understand that you will be the one authenticating them today for your testimony?
>
> A. I'm not going to authenticate anything. If the witness is pushing anything forward, the witness needs to be the one that authenticates and certifies that what you're getting ready to put on the screen is actually accurate and authenticated.

(*See* Transcript at 22:7-18).

Plaintiff routinely used this spurious argument to refuse to authenticate even routine documents he had signed. For example, when asked to acknowledge his signed account application, Plaintiff refused to do so because "I have nothing from the defendant to certify or authenticate this document as being accurate with my signature on it, no. … I am not going to authenticate or certify anything. You're asking me if that is my signature and I'm saying it appears to be my signature. I have no way of knowing that for sure, sir. This is a document that you can create in 15 minutes on Adobe." (*See* Transcript at 34:2 to 36:1). Similarly, when asked to acknowledge his beneficiary designation form, Plaintiff asserted that, because the form "has not been properly authenticated", the handwriting on the form "appears that it could be my handwriting" but "I do not affirm that it's my handwriting." (*See* Transcript at 63:20 to 65:1). And when asked to acknowledge the three notices Provident sent, explicitly warning Plaintiff it would close his account if he failed to pay his annual fee, Plaintiff testified "I cannot affirm, nor deny that I received these notices … because there's no evidence that says that I have received these." (*See* Transcript at 104:22 to 105:8).

"[T]he Supreme Court has made clear that even *pro se* litigants must follow rules of civil procedure." *Cady v. Sheahan*, 467 F.3d 1057, 1061 (7th Cir. 2006) (citing *McNeil v. United States*, 508 U.S. 106, 113 (1993)). *Accord Pearle Vision, Inc. v. Romm*, 541 F.3d 751, 758 (7th Cir. 2008) ("it is also well established that pro se litigants are not excused from compliance with procedural rules") (citing *McNeil*). Provident notes that Plaintiff is no run-of-the-mill *pro se* litigant. To the contrary, he has been admonished by several courts when he has repeatedly attempted to engage in the unauthorized practice of law. *See, e.g., Kimbrough v. Fortune Companies, Inc.*, 2023 WL 8827631 (7th Cir. Dec. 21, 2023); *Branyan v. JPMorgan Chase Bank*, 2023 WL 2570247 (S.D. Ind. Feb. 15, 2023). Just last year, the court in *Knapp v. Compass Minnesota, LLC*, commented that "Kimbrough has also been previously warned by other courts to cease his attempts to engage in the unlicensed practice of law, which he has done in both state and federal courts." 2024 WL 2832502 at * 11, n. 5 (D. Minn. June 4, 2024) (collecting cases).

Hon. Mark J. Dinsmore, U.S.M.J.
July 15, 2025

      Here, Plaintiff has willfully and purposefully flouted his obligations under Rule 30 not to impede, delay, and frustrate Provident's right to fairly examine him.

      Provident therefore respectfully requests that the Court convene a conference to address Plaintiff's misconduct, and Provident's request for leave to file a motion either to compel Plaintiff to appear for his deposition in person under the supervision of a Court-appointed special master, or alternatively to dismiss Plaintiff's complaint and for other appropriate sanctions, including without limitation Provident's attorney fees and costs incurred in connection with this application.

      Thank you for Your Honor's attention to this matter.

      Respectfully,

      Robert H. Bernstein

Encl.

cc:    Plaintiff and All Counsel of Record (via ECF and email)