**In the Matter Of:**

*KIMBROUGH v*

*PROVIDENT TRUST GROUP*

---

*JOEY KIMBROUGH*

*July 08, 2025*

---



KIMBROUGH v.
PROVIDENT TRUST GROUP

Case 1:25-cv-00342-JRS-MJD    Document 50-1    Filed 07/15/25    Page 2 of 44 PageID

#: 271

Joey Kimbrough
July 08, 2025

1

1   UNITED STATES DISTRICT COURT

2   SOUTHERN DISTRICT OF INDIANA

3   -----------------------------------------

4   JOEY KIMBROUGH,

5                         Plaintiff,

6           vs.         Civil Action No.
                        1:25-cv-00342-JRS-MJD

7

8   PROVIDENT TRUST GROUP, LLC,

9                         Defendant.

10  -----------------------------------------

11

12

13

14        REMOTE VIDEOTAPED DEPOSITION OF

15                JOEY KIMBROUGH

16

17

18

19             Tuesday, July 8, 2025

20              12:05 p.m. (ET)

21

22

23  Reported Stenographically By:

24  Nicolette Urzia, CSR

25  Job No. 2025-989695

Page 2

```
 1

 2

 3

 4                    July 8, 2025

 5                  12:05 p.m. (ET)

 6

 7

 8

 9

10      Videotaped Deposition of JOEY

11   KIMBROUGH, held remotely via Zoom,

12   before Nicolette Urzia, a Certified

13   Shorthand Reporter and Notary Public.

14

15

16

17

18

19

20

21

22

23

24

25
```

Page 3

```
 1   REMOTE APPEARANCES:

 2

 3   JOEY KIMBROUGH, PRO SE

 4           1712 Candy Court South

 5           Kokomo, Indiana 46902

 6           joeykokomo2002@yahoo.com

 7

 8

 9   ON BEHALF OF DEFENDANT:

10   GREENBERG TRAURIG, LLP

11           500 Campus Drive

12           Suite 400

13           Florham Park, New Jersey 07932

14   BY:     MICHAEL J. SLOCUM, ESQ.

15           slocumm@gtlaw.com

16

17

18   ALSO PRESENT:

19       JOSHUA CLARKE, Videographer

20       JESSICA REYNOLDS, In-House, Provident

21

22

23

24

25
```

Page 4

```
 1   --------------- I N D E X -----------------

 2   WITNESS          EXAMINATION BY         PAGE

 3   JOEY KIMBROUGH

 4              MR. SLOCUM                 7

 5

 6    ------ EXHIBITS FOR IDENTIFICATION ------

 7

 8   EXHIBIT 3    Plaintiff's Disclosures    26

 9                Pursuant to Court Order

10

11   EXHIBIT 5    IRA Application            32

12

13   EXHIBIT 15   Composite Exhibit -        40

14                Notices

15

16   EXHIBIT 6    Bates Provident 274        46

17                through 278

18

19   EXHIBIT 7    Bates Provident 64         49

20                through 66

21

22   EXHIBIT 4    Affidavit of Damages       51

23

24

25
```

Page 5

```
 1   --------------- I N D E X -----------------

 2   EXHIBIT 16   Palumbo v. Provident       56

 3                Trust Group, LLC,

 4                Northern District of New

 5                York case

 6

 7   EXHIBIT 17   Provident's document       63

 8                production, Bates

 9                Provident 1 through 490

10

11   EXHIBIT 8    Past Due Notice dated      84

12                January 9, 2024

13

14   EXHIBIT 9    Past Due Notice dated      96

15                February 6, 2024

16

17   EXHIBIT 10   Past Due Final Notice     101

18                dated March 7, 2024

19

20   EXHIBIT 11   Past Due Closing Letter   106

21                dated July 9, 2024

22

23

24

25
```

Page 6

1          THE VIDEOGRAPHER:  We are now on
2     the record on July 8, 2025 at
3     approximately 12:05 p.m., Eastern Time
4     for the remote video deposition of
5     Joey Kimbrough in the matter of Joey
6     Kimbrough versus Provident Trust
7     Group, LLC.
8          My name is Joshua Clarke and I'm
9     the videographer on behalf of Lexitas.
10         Starting with our taking
11    attorney, will all counsel please
12    introduce themselves and who they
13    represent.
14         MR. SLOCUM:  Yes.  Hello.  My
15    name is Michael Slocum.  I'm an
16    attorney with Greenberg Traurig and I
17    represent the defendant, Provident
18    Trust Group.
19         MS. REYNOLDS:  I'm Jessica
20    Reynolds.  I'm in-house counsel for
21    Provident Trust Group.
22         THE VIDEOGRAPHER:  Okay, thank
23    you.  At this time will the court
24    reporter please swear in the witness.
25    JOEY KIMBROUGH,

Page 7

1          called as a witness, having been
2          duly sworn by a Notary Public, was
3          examined and testified as follows:
4     EXAMINATION BY
5     MR. SLOCUM:
6          Q    All right.  Hello,
7     Mr. Kimbrough.  How are you?
8          A    I'm doing well, Mr. Slocum.
9          How are you?
10         Q    I'm doing well as well.  Thank
11    you.
12         A    Good.
13         Q    So as you know, I represent
14    Provident in the lawsuit that you've
15    brought.  We are here today to take your
16    deposition.
17         Have you ever given a deposition
18    before?
19         A    I have.
20         Q    How many times?
21         A    One time that I can recall.
22         Q    Okay.  Do you recall when that
23    was approximately?
24         A    Four plus years ago.
25         Q    Okay.  So as you may recall,

Page 8

1     this is essentially a question and answer
2     session.
3          A    Okay.
4          Q    I will be asking a series of
5     questions today.
6          Do you understand that you are
7     under oath and obligated to answer my
8     questions truthfully to the best of your
9     ability, no different than if you were
10    testifying in court?
11         A    I one hundred percent do, yes.
12         Q    Ms. Urzia is our court reporter
13    today and she will be taking down
14    everything that you and I and anyone else
15    may say during the course of the deposition
16    and typing it up into a booklet called a
17    transcript for future use in the
18    proceedings.
19         In order to make her job easier,
20    there are some ground rules I'm going to
21    ask we both try to abide by.
22         The first is that the court
23    reporter cannot take down anything other
24    than spoken words.  So no nodding of the
25    head, no shrugging your shoulders, no

Page 9

1     "uh-uh," things like that.  All of your
2     answers have to be verbalized.
3          Do you understand?
4          A    I do.
5          Q    Similarly, the court reporter
6     cannot take down, cleanly, more than one
7     person speaking at a time.  So I'm going to
8     ask that even if you think you know where
9     my question is going, you let me finish it
10    before starting your answer.  And I will
11    likewise do my best to let you finish your
12    answer before starting my next question.
13         All right?
14         A    Yes.
15         Q    If at any point you do not hear
16    one of my questions or you do not
17    understand one of my questions, whether
18    it's because there's a technical difficulty
19    or you just don't understand what I'm
20    asking, please let me know.  I'll be happy
21    to rephrase it, have it read back, whatever
22    the case may require.
23         And the reason I say that is
24    because if you answer a question, we will
25    all assume that you heard it and understood

## Page 10

1  it.

2          Fair enough?

3      A    Yes.

4      Q    Are you under the influence of

5  any medications or other substances that

6  might impact your ability to testify today?

7      A    No.

8      Q    Can you think of any other

9  reason you might have difficulty testifying

10 today?

11     A    None, no.

12     Q    Where are you testifying from,

13 physically, today?

14     A    My principal address, it's 1712

15 Candy Court South, Kokomo, Indiana 46902.

16     Q    Is that a residence?

17     A    It is.

18     Q    Is there anyone else in the room

19 with you?

20     A    No, there is no one here.

21     Q    Okay.  If at any point that

22 changes, please let us know.  We have to

23 note it for the record.  All right?

24     A    Yes.

25     Q    Other than the individuals who

## Page 11

1  are on this Zoom meeting, are you in any

2  form of communication, whether

3  electronically or otherwise, with any other

4  person who is not part of this proceeding?

5      A    Was that question directed at

6  me?

7      Q    Correct.

8      A    No, no, there is no one else.

9      Q    Okay.

10     A    No.

11     Q    Okay.  Do you have any papers in

12 front of you that relate to this case?

13     A    I have a general objection that

14 I would like to read on the record before

15 we get going and that's it.

16     Q    So this is a pretyped objection?

17     A    Yes, that I created.

18     Q    Okay.  What is it an objection

19 to?

20     A    It's a general objection, just

21 what I'm going to put on the record.

22     Q    Well, that's really not how this

23 works.  You have to have an objection to

24 one of my questions.

25     A    Oh, I'll do that as well.

## Page 12

1      Q    Okay.  What is it that you're

2  objecting to?

3      A    I'm going to put a general

4  objection on the record prior to us getting

5  going.  And if you have a concern with

6  that, I would ask that we call Magistrate

7  Dinsmore.

8      Q    All right.  You have yet to

9  answer my question.  To what are your

10 general objection or objections directed?

11     A    Preservation of rights, scope

12 and relevance, authentication and

13 certification, notice regarding counsel,

14 conduct of counsel, theft by deception, and

15 oath of office.

16     Q    When did you prepare these

17 objections?

18     A    This morning.

19     Q    Did anyone assist you in

20 preparing them?

21     A    No.  I don't need assistance.

22     Q    How long do you suspect it will

23 take you to put these objections on the

24 record?

25     A    I can read them in a minute and

## Page 13

1  a half, if I'm not stopped.

2      Q    All right.  Well, in order to

3  keep the proceedings going, please put your

4  objection on the record, bearing in mind

5  that I do not acquiesce or concede anything

6  in it until I've heard it.

7      A    I one hundred percent understand

8  that.

9          These are the general objections

10 and reservations of rights, is what it's

11 stylized as.  Before this deposition

12 proceeds, I, Joey Kimbrough, the plaintiff,

13 make the following general objection and

14 statement for the record.

15         Number one, my preservation of

16 rights.  I assert all rights and privileges

17 afforded to me under the United States

18 Constitution, the Federal Rules of Civil

19 Procedure and the Federal Rules of

20 Evidence, including, but not limited to,

21 Rule 301 concerning presumptions, Rule 600

22 et seq. governing witnesses, and Rules 900

23 et seq. regarding the authentication and

24 certification of documents.

25         I do not waive any objections

Page 14

1 that may arise during the course of this
2 deposition or at trial.
3         Number two, the scope and
4 relevance.  I object to any line of
5 questioning that exceeds the scope of
6 discovery outlined in the Federal Rules of
7 Civil Procedure and any questions that are
8 irrelevant, unduly burdensome, or intended
9 to harass or embarrass.
10        Number three, authentication and
11 certification.  I specifically object to
12 the use of any documents not properly
13 authenticated or certified in accordance
14 with Federal Rules of Evidence 901 and 902.
15        Number four, notice regarding
16 counsel.  The plaintiff places opposing
17 counsel, Michael J. Slocum, on notice
18 according to the official records of the
19 New Jersey Roles of Attorneys.
20        Mr. Slocum, Attorney ID
21 033152003, was admitted to the New Jersey
22 Bar on December 30, 2003.  It's plaintiff's
23 belief that Mr. Slocum has been engaged by
24 defendant Provident Trust, LLC as an
25 advocate.

Page 15

1         The conduct of counsel, number
2 five, the plaintiff asserts that
3 Mr. Slocum's involvement may violate New
4 Jersey Rules of Professional Conduct 8.4C,
5 which prohibits conduct involving fraud,
6 dishonesty, deceit, or misrepresentation.
7         Furthermore, under Rules of
8 Professional Conduct 3.7, it is improper
9 for an advocate to act as a witness unless
10 permitted by the Court.  Plaintiff believes
11 that Mr. Slocum has no firsthand knowledge
12 of the facts at issue.
13        Number six, theft by deception
14 pursuant to New Jersey State Statute 20C
15 20-4.  The plaintiff believes that actions
16 by Mr. Slocum and/or others associated with
17 the defendant may constitute theft by
18 deception defined as obtaining something of
19 value through deceitful means.
20        Number seven, oath of office.
21 On or about December 30, 2003, Mr. Slocum
22 is believed to have taken the following
23 oath upon admission to the New Jersey Bar.
24        I, Michael J. Slocum do solemnly
25 swear or affirm that I will support the

Page 16

1 Constitution of the United States and the
2 Constitution of the State of New Jersey,
3 that I will bear true faith and allegiance
4 to the same and to the governments
5 established in the United States and in the
6 state under the authority of the people and
7 that I will perform the duties of an
8 attorney at law faithfully and partially
9 and justly to the best of my ability.
10        This statement is made under
11 oath and entered into the record to
12 preserve all applicable rights,
13 protections, and objections.
14    Q    Okay.  Thank you.
15        And again, just to clarify, I am
16 not conceding any of those points, but
17 we'll proceed.
18        Do you have any other papers or
19 electronic documents in front of you
20 pertaining to this case?
21    A    None that I can see in front of
22 me, no.
23    Q    Okay.  Other than preparing your
24 general objection, what if anything did you
25 do to prepare for this deposition?

Page 17

1    A    Just looked through old files
2 and that was really about it.
3    Q    What old files specifically did
4 you look through?
5    A    Just the court filings that -- I
6 know there was a tough time for you getting
7 on the record as pro vice, but I just kind
8 of looked through the dockets as it's in
9 the federal court right now.
10   Q    Okay.  How long did you spend
11 looking through these records?
12   A    Approximately an hour.
13   Q    And do you recall when you did
14 this?
15   A    Probably yesterday afternoon, to
16 the best of my knowledge.
17   Q    Did you look through them with
18 anyone or on your own?
19   A    Just on my own.
20   Q    What's your highest level of
21 education?
22   A    I'm going to object.  The
23 plaintiff objects on the ground of Rule 401
24 though 403 of the Federal Rules of
25 Evidence.  The information sought is not

Page 18

1  relevant to any claim or defense in this
2  action and/or its probative value by the
3  substantially outweighed by the danger of
4  unfair prejudice, confusion of the issues
5  or undue delay.
6          Plaintiff does not waive this
7  objection and reserves the right to
8  challenge its admissibility at trial.
9          That objection withstanding, the
10 plaintiff will answer as follows:
11         My highest level of education is
12 a master's degree.
13      Q   Master's in what field?
14      A   Master's in business.
15      Q   In business or business
16 administration?
17      A   In business science, I believe
18 it is.  Master of science in business.
19      Q   Okay.  When did you receive that
20 degree?
21      A   I believe it was 2008.
22      Q   And from what institution did
23 you receive it?
24      A   Plaintiff objects on the grounds
25 of Rules 401 through 403 of the Federal

Page 19

1  Rules of Evidence.  The information sought
2  is not relevant to any claim or defense in
3  this action or its probative value is
4  substantially outweighed by the danger of
5  unfair prejudice, confusion of the issues,
6  or undue delay.
7          Plaintiff does not waive this
8  objection and reserves the right to
9  challenge its admissibility at trial.
10         That objection withstanding, the
11 plaintiff will answer as follows:
12         The institution was Indiana
13 Wesleyan University.
14      Q   Indiana Wesleyan?
15      A   Yes.
16      Q   Do you have any formal education
17 beyond your masters that did not result in
18 a degree?
19      A   I'm sorry.  I didn't catch the
20 full extent of that question.
21      Q   Sure.
22         Did you attend any further
23 formal education beyond receiving your
24 masters that did not culminate in you
25 receiving another degree?

Page 20

1      A   Plaintiff objects on the grounds
2  of Rules 401 through 403 of the Federal
3  Rules of Evidence.  The information sought
4  is not relevant to any claim or defense in
5  this action and/or its probative value is
6  substantially outweighed by the danger of
7  unfair prejudice, confusion of the issues,
8  or undue delays.
9          The plaintiff does waive this
10 objection and reserves the right to
11 challenge its admissibility at trial.
12         The objection withstanding, the
13 plaintiff answers as follows:
14         No.
15      Q   Mr. Kimbrough, I understand your
16 objection to some of my questions.  It's
17 sufficed just to simply object to form.  We
18 don't need to have a lengthy read objection
19 every single time or this is going to take
20 us quite some time.
21         Do you understand that?
22      A   I've got all the time in the
23 world, counsel.  I don't mind, I honestly
24 don't.
25      Q   Well, I have no intention of

Page 21

1  spending all the time in the world.  So I
2  would ask that you please simply object to
3  the form.  And if you are going to not
4  answer the question, let me know without
5  the 30-second read-on, please.
6      A   I will answer every question
7  that you ask, but I will read those
8  objections before I answer anything.
9      Q   Would you agree to having a
10 standing objection as you've read it so we
11 can move on with this more quickly?
12      A   No, I can't because there's -- I
13 just -- there are a couple different
14 objections that I'm probably going to
15 insert on the record, especially as it
16 results to any exhibits that you might push
17 forward, especially when we're talking
18 about admissibility and the fact that
19 there's probably not going to be an
20 authentication or certification with any of
21 those documents.  And, no, I can't agree to
22 that.  I appreciate the question, but, no.
23      Q   Okay.  Do you have any formal
24 legal training, sir?
25      A   I wanted to go to law school

Page 22

1  once upon a time.  I took the LSAT.  It's
2  probably been 30-plus years ago.
3      Q     So you have not gone to law
4  school though?
5      A     I have not attended any law
6  school, no, sir.
7      Q     When you say you have concerns
8  about the authentication of certain
9  exhibits, do you understand that you will
10  be the one authenticating them today for
11  your testimony?
12      A     I'm not going to authenticate
13  anything.  If the witness is pushing
14  anything forward, the witness needs to be
15  the one that authenticates and certifies
16  that what you're getting ready to put on
17  the screen is actually accurate and
18  authenticated.
19      Q     Okay.  That's --
20      A     There is a witness from the
21  defendant here that if she would like to
22  certify and authenticate.  It's not going
23  to be you though, I promise.
24      Q     No, Mr. Kimbrough.  You're
25  completely mistaken.  Respectfully, you're

Page 23

1  just wrong.  First of all, Ms. Reynolds is
2  not a witness.  She is an attorney.
3      A     Nor are you.
4      Q     I never said I was.  I'm an
5  attorney.
6      A     Great.
7      Q     You are --
8      A     There are some things we're
9  going to have to disagree on.  So let's
10  just cross that bridge, potentially,
11  Mr. Slocum, when we get to that.
12          And then you're the one that
13  says you want to push the ball forward.
14  Let's do that.  Ask your questions, I'm
15  here to answer --
16      Q     All right.  Have you ever --
17      A     -- in good faith.
18      Q     -- consulted with an attorney in
19  connection with this case?
20      A     No, I have not.
21      Q     Have you paid any attorney any
22  fees of any sort in connection with this
23  case?
24      A     No, I have not.
25      Q     As you sit here today, do you

Page 24

1  have any intention of any paying any
2  attorney any fees of any sort in connection
3  with this case?
4      A     No, I do not.  I don't think
5  it's needed.
6      Q     What is JMC Property Group, LLC?
7      A     JMC Property Group, LLC is a
8  Limited Liability Company that was
9  organized in the State of Indiana.
10      Q     Do you know when it was
11  organized?
12      A     I do not, but I can jump on the
13  state -- Secretary of State's business
14  search and find that real quick, if you'd
15  like.
16      Q     No, that's all right.
17          What if any relation do you have
18  with JMC Property Group, LLC?
19      A     I'm a member.
20      Q     Since what time have you been a
21  member?
22      A     Plaintiff objects on the grounds
23  of Rules 401 through 403 of the Federal
24  Rules of Evidence.  The information sought
25  is not relevant to any claim or defense in

Page 25

1  this action and/or its probative value
2  substantially outweighed by the danger of
3  unfair prejudice, confusion of the issues
4  or undue delay.
5          Plaintiff does not waive this
6  objection and reserves the right to
7  challenge its admissibility at trial.
8          That objection withstanding, the
9  plaintiff will answer as follows:
10          I'm unsure of the timing of my
11  membership in JMC Property Group, LLC, but
12  I don't find the relevance.
13      Q     Well, it's for me to decide
14  whether I think it's relevant, sir.
15      A     I appreciate that.
16      Q     What is the nature of the
17  business in which JMC Property Group is in?
18      A     Plaintiff objects on the grounds
19  of Rules 401 through 403 of the Federal
20  Rules of Evidence.  The information sought
21  is not relevant to any claim or defense in
22  this action and/or its probative value is
23  substantially outweighed by the danger of
24  unfair prejudice, confusion of the issues
25  or undue delay.

Page 26

1           Plaintiff does not waive this
2  objection and reserves the right to
3  challenge its admissibility at trial.
4           That objection withstanding, the
5  plaintiff will as follows:
6           It was created to handle some of
7  my business interests.
8      Q     Are there any other members
9  besides yourself of JMC Property Group,
10 LLC?
11     A     There are no other members of
12 JMC Property Group, LLC.
13     Q     Have there ever been any other
14 members?
15     A     There have been no other members
16 of JMC Property Group, LLC.
17     Q     I'd like to show you first what
18 I have premarked as Exhibit 3.
19           (Exhibit 3, Plaintiff's
20      Disclosures Pursuant to Court Order,
21      were remotely introduced and provided
22      electronically to the reporter, as of
23      this date.)
24 BY MR. SLOCUM:
25     Q     Let me know when you're able to

Page 27

1  see the document.
2      A     I can see it.
3      Q     All right.  Let me know if I'm
4  scrolling too quickly or too slowly.
5           Do you recognize this document?
6      A     It -- it's not jumping out to me
7  as --
8      Q     I'll show you the first page.
9      A     Okay.  Plaintiff's required
10 disclosures pursuant to the court's order
11 at docket 45.
12          Okay.  So it's something based
13 off a court order by the magistrate.  So
14 this is apparently my disclosures that I
15 filed with the Court.
16     Q     All right.  Well, let me bring
17 us to page 4.  Do you remember
18 electronically signing these on or about
19 April 15, 2025 and certifying that you
20 served them?
21     A     It appears here that I did on or
22 about that date.
23     Q     Okay.  When you say it appears
24 that you did, do you have any reason to
25 deny that you did?

Page 28

1      A     None that is in front of me, no.
2      Q     All right.  All right.  So first
3  page was identification of witnesses.  You
4  identified yourself, Jordan Dacres, Emerald
5  Morales, and Does one through five.
6           Do you see that?
7      A     I do.
8      Q     Have you ever met Jordan Dacres?
9      A     I have not.
10     Q     Have you ever spoken with Jordan
11 Dacres?
12     A     Not that I can recall.
13     Q     Have you ever met Emerald
14 Morales?
15     A     I have not.
16     Q     Have you ever spoken with
17 Emerald Morales?
18     A     To the best of my knowledge, no.
19     Q     Do you know who Gloria Viel,
20 V-I-E-L, is?
21     A     I do not recognize that name,
22 no.
23     Q     So it would be safe to say that
24 you never met nor spoken with Ms. Viel?
25     A     To the best of my nothing, that

Page 29

1  is correct.
2      Q     Okay.  Have you, through
3  discovery, yet identified any of the Does 1
4  through five that you identified?
5      A     Not -- not yet, no.
6      Q     Other than the people we've
7  spoken about, Jordan, Emerald, Gloria, are
8  there any other witnesses you belief have
9  relevant knowledge to your lawsuit?
10     A     There are quite a few that I'm
11 entertaining at the present.  Would you
12 like to speak through those.
13     Q     Yes, please.
14     A     Yeah, just doing a simple Google
15 search, I think the rating right now is 1.7
16 Google rating.  Quite a few people on there
17 that have outlined their disgust with the
18 Provident product and I'm thinking of
19 subpoenaing through the Court to have them
20 served as character witnesses.
21     Q     Do you have any names?
22     A     I do not, no.  I'd be glad to
23 pull it up and we can look through that 1.7
24 rating.  It's quite a few --
25     Q     When you say 1.7 rating, I'm not

## Page 30

1   sure what you mean by that.
2           Can you clarify that?
3       A   A Google 1 through 5 rating, 1
4   being bad and a 5 being very good.
5       Q   I see.  So these are other
6   individuals with complaints against
7   Provident?
8       A   That's what it appears, yes.
9       Q   Do you have any personal
10  knowledge of the circumstances of their
11  complaints against Provident?
12      A   Only what I read online and if I
13  do subpoena them, which I'm thinking about
14  doing, I'm sure through discovery I'll find
15  out a lot more.  Right now it's all
16  speculative.  I'll be the first to let you
17  know that.
18      Q   Do you believe that any of them
19  have any personal knowledge of the
20  circumstances of your complaint against
21  Provident?
22      A   No, I wouldn't think that they
23  would because I'm not one who has gone on
24  there and given Provident the same rating
25  that most of them have.  So there would be

## Page 31

1   no way that I could recall unless they've
2   searched pacer like you or I might do to
3   find any lawsuits that are out there in the
4   Southern District of Indiana or elsewhere.
5       Q   When I use the phrase firsthand
6   knowledge, what do you understand that
7   mean?
8       A   Somebody that is very in tune
9   with this case or any other case that might
10  have firsthand knowledge, specifically a
11  party to the cause of action.
12      Q   If I understood correctly, it's
13  your intention, potentially, to subpoena
14  these individuals to provide character
15  testimony about Provident, the
16  organization?
17      A   Well, it's part of discovery to
18  find out, yes, if there's anyone else out
19  there that has any other similar situated
20  arguments, let's say, to Provident Trust
21  Group, LLC, similar to mine, yes.  I would
22  love to talk to anyone that's had maybe the
23  same issues that I've had with Provident
24  Trust Group, LLC.
25      Q   I'll take that document down.

## Page 32

1   And for the record, that was Exhibit 3.
2       A   I'm sorry, that didn't come
3   through the last part, exhibit.
4       Q   3.
5       A   Okay.
6       Q   When did you first learn of the
7   exist stance of Provident Trust Group?
8       A   Plaintiff objects reaffirming
9   the general objection previously entered
10  into the record under oath.  Plaintiff does
11  not waive this objection and reserves the
12  right to challenge its admissibility at
13  trial but will answer the question subject
14  to that objection as follows:
15          I think the first time I became
16  aware of Provident Trust Group was probably
17  when they took out their annual maintenance
18  fee for the first time, especially since I
19  signed up in 2011 with Guidant Financial.
20      Q   You referenced the first time
21  Provident took out it's annual fee.
22          Do you recall when that was?
23      A   I do not, no.
24          (Exhibit 5, IRA Application, was
25  remotely introduced and provided

## Page 33

1       electronically to the reporter, as of
2       this date.)
3   BY MR. SLOCUM:
4       Q   I'm going to put up what I've
5   premarked at Exhibit 5.  Please let me know
6   when you can see this document.
7       A   I can see it.
8       Q   All right.  So this is exhibit
9   5.  It is Bates labeled PROV for Provident
10  457 through 464.
11          I'm going to scroll through it.
12  Let me know if you recognize this
13  individual retirement account application
14  document?
15      A   Plaintiff objects to the
16  introduction of this exhibit on the grounds
17  that it is not been properly authenticated
18  pursuant to the Federal Rules of Evidence
19  901 and 902.
20          Plaintiff does not waive this
21  objection and reserve the right to
22  challenge its admissibility at trial.
23          Subject to this objection,
24  plaintiff will proceed to address the
25  exhibit as requested.

Page 34

1           No, I do not recognize that.
2      Q    I'm going to turn to the second
3  page, Provident 458.  Is that your
4  signature?
5      A    It appears to be my signature.
6      Q    Do you have any factual reason
7  to deny that it's your signature?
8      A    I have nothing from the
9  defendant to certify or authenticate this
10 document as being accurate with my
11 signature on it, no.
12     Q    All right.  Mr. Kimbrough, I've
13 said this before, the way this works is I
14 can present you with any document I wish.
15 I'm asking you as the witness to
16 authenticate them?
17     A    And I am telling you, I am not
18 going to authenticate any document that you
19 put up.  I already stated that before,
20 Mr. Slocum, and I appreciate that fact.
21 There are going to be some things that you
22 and I disagree on.
23          I have the objection on the
24 record and I'm telling you it's not been
25 authenticated, it is not certified from the

Page 35

1  defendant.  You're acting as a witness
2  right now, sir, and you are not --
3      Q    No, I'm not.
4      A    You're an advocate who has put
5  up a document on the record under oath and
6  is saying that this is authenticated by
7  your client.  That is not going to happen.
8  I am not authenticating anything that your
9  client is putting up on the screen through
10 you at the advocate, sir.
11          Mr. Kimbrough, the way a
12 deposition works, I am not a witness.  I am
13 not authenticating this.  I don't have to
14 have Provident authenticated.
15     A    I have answered your --
16     Q    Sir, please let me finish
17 talking.
18     A    -- questions.
19     Q    Please let me finish --
20     A    And I will do so.  I am not
21 going to authenticate or certify anything.
22 You're asking me if that is my signature
23 and I'm saying it appears to be my
24 signature.  I have no way of knowing that
25 for sure, sir.  This is a document that you

Page 36

1  can create in 15 minutes on Adobe.
2      Q    Do you remember --
3      A    And I've already -- you've asked
4  and I've answered.  I do not --
5      Q    I haven't finished my question,
6  sir.  I haven't finished my question.
7          Do you remember filling out this
8  individual retirement account application
9  for Provident Trust sometime in -- received
10 in January 2012, your signature is dated
11 December 28, 2011.
12          Do you remember --
13     A    The alleged signature that
14 you're putting on a document that has not
15 been authenticated or certified, no, I do
16 not remember, just as I answered before.
17     Q    Okay.  Do you deny having
18 applied for an individual requirement
19 account with Provident in December of 2011?
20     A    I deny that I applied for
21 anything with Provident Trust Group and
22 Provident Trust Group has not put anything
23 forward that says that I applied for them,
24 just as your document here page 2 of 6
25 shows, I signed up with Guidant Financial.

Page 37

1          Clearly it appears on this
2  alleged certified and authenticated
3  document that you're trying to get me to
4  say that I didn't sign up for Provident for
5  anything, sir.
6          Guidant Financial is the group
7  that I signed up with for my self-directed
8  IRA.  Regardless of how many times you ask
9  me the questions about Provident, I will
10 always say no.  So we can dispel with that.
11          Guidant Financial is who I
12 signed up with.  And I did not give them
13 the authority to transfer any account ands
14 your client has not put any evidence
15 forward indicated anything otherwise.
16     Q    When did you sign up with
17 Guidant?
18     A    I do not recall that,
19 Mr. Slocum, but it appears in the alleged
20 document that you have pushed forward, it
21 appears that it was on or about, let me
22 read this for you, December 28th of 2011,
23 sir.
24     Q    I see that and that's the same
25 December 28, 2011 at a time next to your

## Page 38

1 signature?
2    A    I do not see anything that would
3 indicate that the signature could not have
4 been cropped, fabricated, there's no
5 certification or authentication that this
6 is even a document that's real.  I've never
7 seen this to the best of my knowledge.
8         And your client has not put
9 anything forward to certify or authenticate
10 that this is anything other than a
11 fabrication of something that you guys are
12 trying to create.  I have no, you know,
13 confirmation that this is even real.  I
14 already put the objection on the record.
15 We can move on if you'd like.  This will --
16 yeah, let's proceed.
17    Q    Have you ever sued Guidant?
18    A    I have not but I am entertaining
19 adding them as a defendant if your
20 frivolous remanding to federal court is not
21 overturned.
22    Q    If you do not sign up with
23 Provident and you believe that you should
24 not be a Provident customer, why did you
25 sue Provident in the first place?

## Page 39

1    A    Because Provident is the one
2 that is trying to collect.
3    Q    What is Provident trying to
4 collect?
5    A    They evidently think that I owe
6 them a maintenance fee or something, I
7 don't know, there's some New Jersey outfit
8 that contacted me a while back, but as
9 we'll see in the deposition next week with
10 Mr. Dacres.  They're the ones that are
11 sending me emails about in-kind
12 distributions and stuff that I requested
13 which is I have no idea what they're
14 talking about.  I have never requested
15 anything from Provident Group to the best
16 of my knowledge.
17    Q    So you were receiving emails
18 from Provident Trust Group?
19    A    I received an email on or about
20 July 9th of last year indicating that I had
21 requested something, which that's complete
22 fraud.  I hadn't requested anything from
23 them.
24    Q    Was that -- that one the first
25 email you ever received from them though?

## Page 40

1    A    I have not evidence in front of
2 me that's certified or authenticated that I
3 received anything from Provident.  I would
4 love for you to put something up.  Any
5 emails, any correspondence.  Other than
6 their threats and their fraudulent claims.
7    Q    Let me put up -- and we may come
8 back to the account application.  Let me
9 put up Exhibit 15 which is a composite
10 Exhibit.
11         (Exhibit 15, Composite Exhibit -
12    Notices, were remotely introduced and
13    provided electronically to the
14    reporter, as of this date.)
15 BY MR. SLOCUM:
16    Q    Let me know when you can see
17 this document.
18    A    I can see it, yes.
19    Q    Okay.  Again, let me know if I'm
20 scrolling too quickly or too slowly.
21    A    No, it's perfect.
22    Q    Do you recognize these notices
23 from Provident Trust Group?
24    A    Plaintiff objects to the
25 introduction of this Exhibit on the ground

## Page 41

1 that it is not been properly authenticated
2 pursuant to Federal Rules of Evidence 901
3 and 902.
4         Plaintiff does not waive this
5 objection and reserves the right to
6 challenge its admissibility at trial.
7 Subject to this objection, plaintiff will
8 proceed to address the Exhibit as
9 requested.
10         I do not recall having seen
11 this, no.  And I don't believe that the
12 defendant has put any evidence forward that
13 I had seen this in any capacity.
14    Q    So you never received any of
15 these notices, is that your testimony?
16    A    I am saying that I do not recall
17 having received any of these notices is my
18 testimony and I don't that any of these
19 documents have been certifies or
20 authenticated that they're even real.
21    Q    All right.  So if you don't
22 recall whether you received them, then you
23 can't deny that you received them, would
24 you agree with that?
25    A    That's a presumption that you're

KIMBROUGH v.
PROVIDENT TRUST GROUP

Joey Kimbrough
July 08, 2025

## Page 42

1  putting forward.  I think pursuant to
2  Federal Rule of Evidence 301, I think
3  you're putting words in my mouth.  So if
4  you would like to believe that, then so be
5  it.
6      Q    Do you deny receiving these
7  notices?
8      A    I do not deny or object to
9  receiving these notices.  But I've already
10 put the proper objection on the record as
11 far as the certification and authentication
12 from your client about the admissibility of
13 these documents.
14     Q    These are a series of
15 notifications over the span of several
16 years reminding you that you need to have a
17 minimum cash balance of $500 in your
18 account, would you agree with that?
19     A    Are you saying that as the
20 witness, that you're testifying now under
21 oath?
22     Q    No, no.
23     A    Okay.  So then --
24     Q    No, I'm not.
25     A    You asked me that.  You're

## Page 43

1  asking me as an advocate to answer
2  something that I've already put an
3  objection that this is not certified or
4  authenticated trying to get me to certify
5  or authenticate something that I'm telling
6  you clearly that I do not recall having
7  seen, Mr. Slocum.
8      Q    That is precisely how a
9  deposition works, Mr. Kimbrough.  I am not
10 testifying.  I am asking you to testify --
11     A    And I am telling you --
12     Q    You have to let me finish my
13 question, sir.  You got to let me finish my
14 question.  You got to let me finish my
15 question.  You are obligated to answer my
16 question, not accuse me of testifying.
17     My question to you is, would you
18 agree that these are a series of notices
19 that Provident sent to you over the span of
20 several years reminding you of your
21 obligation to maintain $500 in your
22 account?
23     A    I would never agree to that, I
24 would never testify to the certification
25 and the authentication of these documents

## Page 44

1  when I'm telling you clearly that I do not
2  recall having seen these and your
3  client has not given any evidence on the
4  record or otherwise that these are even
5  real.
6      Q    Do you deny that they're real?
7      A    I'm not denies or anything of
8  the sort, I'm saying that you I don't
9  recall having seen these and your client
10 has not given any evidence otherwise to
11 indicate that these are even real.
12     Q    Do you have any evidence that
13 they're not real or are you simply just
14 hypothesizing?
15     A    I'm not hypothesizing.  I'm
16 telling you based off belief that I already
17 put the objection on the record about the
18 Exhibits not having been certified or
19 authenticated by your clients, and your
20 clients have failed throughout these
21 proceedings, especially discovery, to give
22 any evidence that I ever received these.
23     I'm not going to tell you that I
24 received these when, in fact, I'm not sure
25 that I have.  If they have evidence that I

## Page 45

1  signed for these or a digital footprint, I
2  would love to entertain, but you're asking
3  me to hypothesize on something that I
4  cannot give you assurance.
5      Q    I'm not asking you to
6  hypothesize at all.  Quite the contrary.
7  I'm asking whether you have evidence
8  demonstrating you did not receive these
9  notices from Provident?
10     A    I do not have evidence that I
11 did not receive them just as I do not have
12 evidence or they have not provided any
13 evidence that I received them.
14     Q    And you --
15     A    You keep saying the same thing.
16     Q    And you testified that you did
17 not receive them, is that correct?
18     A    I am testifying that I do not
19 recall having received them, no.
20     Q    That wasn't my question.  You
21 cannot testify that you cannot receive
22 them.  All you can testify is you don't
23 recall receiving them, is that correct?
24     A    That is correct, yeah.  I'm
25 testifying that I do not recall having

Page 46

1   receive them and I put the proper objection
2   of these exhibits on the record indicating
3   that they have not been certified or
4   authenticated as evidence that would be
5   admissible.
6       Q    Understood.  Thank you.
7       A    Thank you.
8       Q    Do you recall receiving periodic
9   account statements from Provident Trust
10  Group?
11      A    I do not recall having received
12  any periodic account statements.  And I
13  don't believe that there has been any
14  evidence put forward by the defendant that
15  would show that I have received any account
16  statements.
17      Q    Let me share what I've premarked
18  as Exhibit 6.  And this is the 2/1/2024.
19  It is Bates labeled Provident 274 through
20  278.
21          (Exhibit 6, Bates Provident 274
22          through 278, was remotely introduced
23          and provided electronically to the
24          reporter, as of this date.)
25  BY MR. SLOCUM:

Page 47

1       Q    Let me know if you recognize
2   this document, Mr. Kimbrough.
3       A    Plaintiff objects to the
4   introduction of this Exhibit on the grounds
5   that it has not been properly authenticated
6   pursuant to the Federal Rules of Evidence
7   901 and 902.
8           Plaintiff does not waive this
9   objection and reserves the right to
10  challenge its admissibility at trial.
11          Subject to this objection,
12  plaintiff will proceed to address the
13  Exhibit as requested.
14          I do not recall this -- having
15  received this statement, no, sir.
16      Q    In the first quarter of 2024,
17  were you aware that you had a traditional
18  self-directed IRA account with Provident
19  Trust Group?
20      A    I believe that to be accurate.
21      Q    Okay.  Do you recall when you
22  first developed the understanding that you
23  had a traditional self-directed IRA with
24  Provident Trust Group?
25      A    I would say probably at or about

Page 48

1   the time of July 9th when I received an
2   email from an agent named Jordan Dacres
3   saying that I have requested an in-kind
4   distribution.  Again, we'll go back to 2011
5   when I signed up with Guidant and never
6   gave them the approval to transfer my
7   account to Provident.  I hope that answers
8   your question.
9       Q    To some extent.  Could you agree
10  with me that July is not -- well, strike
11  that.
12          Would you agree with them that
13  Q1 of 2024 is prior to July of 2024?
14      A    I would agree that that is
15  accurate, yes.
16      Q    Okay.  So you testified just a
17  moment ago that in Q1 of 2024, you were
18  aware that you had an account with
19  Provident and then you said the first time
20  you became aware was in July of 2024.  Can
21  you explain how that's possible?
22      A    Yeah.  So I, again, I'm trying
23  to help you understand this I think more
24  than anybody.  Guidant is who I signed up
25  with.  So if the assumption is there that

Page 49

1   Guidant is Provident are one in the same,
2   then I mistakenly indicated that Provident
3   was who I was with in Q1 of 2024.  And I
4   would apologize profusely for that
5   misindication of that.  So July does come
6   after Q1 of 2024, yes, to your point.
7       Q    Okay.  Did you think you were
8   still with Guidant in the first quarter of
9   2024?
10      A    I really honestly don't know.
11          Is that relevant?
12      Q    I believe it is.
13      A    Okay.
14      Q    I'm going to put up briefly
15  another Exhibit, which is Exhibit 7.  This
16  is Bates labeled Provident 64 and 65 and
17  66.
18          (Exhibit 7, Bates Provident 64
19          through 66, was remotely introduced
20          and provided electronically to the
21          reporter, as of this date.)
22  BY MR. SLOCUM:
23      Q    Do you see that?
24      A    I do, yes.
25      Q    Okay.  Do you recognize this

| Page 50 | Page 52 |
|---|---|

Page 50

1  document, Exhibit 7?
2      A      Plaintiff objects to the
3  introduction of this exhibit on the grounds
4  that it has not been properly authenticated
5  pursuant to the federal rules of evidence
6  901 and 902.
7            Plaintiff does not waive this
8  objection and reserves the right to
9  challenge its admissibility at trial.
10           Subject to this objection,
11  plaintiff will proceed to address the
12  Exhibit as requested.
13           I do not recall this document.
14     Q      I'm going to once again offer,
15  Mr. Kimbrough, if you'd like to simply have
16  a standing objection so we can move along a
17  little quicker, I'm happy to do that.
18     A      I will once again turn that
19  request down.  I appreciate that.
20     Q      Do you have any reason to deny
21  that this was a notification of the annual
22  fee for your Provident Trust Group account
23  for your fees or the period January 6, 2024
24  through January 5, 2025.
25     A      Yes, I -- I absolutely have the

Page 51

1  reason to deny based off the objection that
2  I just read on the record that this Exhibit
3  has not been certified or authenticated by
4  the defendant.  I don't know if this is
5  real, fake, made up, Adobe created.  I have
6  no idea what this is, sir.
7      Q      Do you deny receiving this?
8      A      I do deny receiving this for the
9  simple statement that I just read the --
10  I'll read it again if you'd like --
11     Q      No, that's --
12     A      As far as my objection goes
13  because what you're -- you're asking me to
14  certify and authenticate something that I'm
15  telling you from, what is it, a year and a
16  half ago that I'm not going to pull from
17  memory a year and a half ago on a document
18  that you're throwing up on the screen that
19  your client has clearly not introduced or
20  certified that I have received in any
21  capacity.
22           (Exhibit 4, Affidavit of
23           Damages, was remotely introduced and
24           provided electronically to the
25           reporter, as of this date.)

Page 52

1  BY MR. SLOCUM:
2      Q      I'm going to show you,
3  Mr. Kimbrough, what I've marked as
4  Exhibit 4.
5            Do you recognize this document?
6      A      I do.
7      Q      Okay.  What is this document?
8      A      It is an affidavit of damages.
9      Q      Is that your signature at the
10  bottom second page on Provident 116?
11     A      It is.
12     Q      And did you sign this on
13  December 3, 2024?
14     A      It appears that I did.
15     Q      Okay.  Well, it says that you
16  did.  Do you have any reason to dispute
17  that you did?
18     A      I have no reason to dispute it,
19  but I mean you're asking me to pull from
20  memory and I'm telling you I did sign it,
21  it appears, on that date.
22     Q      Okay.  Did you prepare this
23  affidavit yourself?
24     A      I did.
25     Q      Did anyone assist you in doing

Page 53

1  that?
2      A      No, it's not needed.
3      Q      Do you recall roughly how much
4  time you spent preparing this affidavit of
5  damages?
6      A      I would object reaffirming the
7  general objection previously entered into
8  the record under oath.
9            Plaintiff does not waive this
10  objection and reserve the right to
11  challenge its admissibility at trial, but
12  will answer the question subject to the
13  objection as follows:
14           I would say that to answer your
15  question, maybe a couple of hours.
16     Q      And did you take all the time
17  you felt you needed to prepare this
18  thoroughly?
19     A      Yeah, yes.
20     Q      And you understood that when you
21  sign it had, you were attesting under oath
22  that all of the assertion made it in were
23  truthful and accurate?
24     A      To the best of my knowledge,
25  yes.

Page 54

1      Q     I'll take that down for the time
2  being.  We'll come back to that I'm going
3  to put back up Exhibit 5, again, which is
4  the account application.
5          All right.  On the second page,
6  Mr. Kimbrough, above what we maintain is
7  your signature and if I understood
8  correctly, you're questioning whether it's
9  your signature, but you have no actual
10 evidence that it's not your signature?
11         There is an account owner
12 agreement and authorization, and I've blown
13 it up a little bit.  It's section 5.
14         Do you see that?
15     A     I do.
16     Q     There is, in the second
17 paragraph of that -- or I'm sorry, second
18 sentence of that paragraph, it says I have
19 received a copy of the application, which
20 would be this document, the IRA custodial
21 account agreement, disclosure statement,
22 money market account disclosure and the fee
23 schedule and disclosure.  I understand that
24 the terms and conditions which apply to
25 this IRA are contained in this application

Page 55

1  and the plan agreement.  I agree to be
2  bound by those terms and conditions.
3          Do you see that?
4      A     I do see that, what you're
5  reading, yes.
6      Q     All right.  Have you ever read
7  the IRA custodial account agreement that
8  you received?
9      A     Plaintiff objects to the
10 introduction, again, of this Exhibit just
11 as I did before on the ground that it has
12 not been properly authenticated pursuant to
13 the Federal Rules of Evidence 901 and 901.
14         Plaintiff does not waive this
15 objection and reserve the right to
16 challenge its admissibility at trial
17 subject to this objection.
18         Plaintiff will proceed to
19 address the Exhibit as requested.
20         As I said before, this is a
21 document that you're presenting that has
22 not been certified or authenticated by your
23 client, and you're asking me if I've sign
24 it.  I couldn't recall before having sign
25 it had and I can't now.

Page 56

1      Q     Okay.  That was not my question.
2  Do you recall reading the IRA custodial
3  account agreement that according to this
4  document, you received?
5      A     I cannot agree to that because
6  this is a none certified none authenticated
7  document that your purporting came from
8  your client that I allegedly sign and had I
9  cannot agree to that.
10     Q     I'm not asking you to agree to
11 anything.  I'm asking have you ever read
12 the IRA custodial account agreement that
13 according to this document, you received?
14     A     I do not believe so, no.
15     Q     Okay.  Let me pull up a copy.
16         (Exhibit 16, Palumbo v.
17     Provident Trust Group, LLC, Northern
18     District of New York case, was
19     remotely introduced and provided
20     electronically to the reporter, as of
21     this date.)
22 BY MR. SLOCUM:
23     Q     And this is going to be Exhibit
24 16.  All right.  And I want you to notice,
25 please, that this one, I picked this

Page 57

1  particular copy for a specific reason.
2          This was in a case that we
3  litigated a few years back in the Northern
4  District of New York.  It was Anthony J.
5  Palumbo versus Provident Trust Group, LLC
6  and the case number is there at the top of
7  this agreement.  It was 6:19-cv-252, again,
8  in the Northern District of New York.
9          The reason I picked this
10 particular copy, Mr. Kimbrough, is because
11 in that case, the plaintiff alleged breach
12 of fiduciary duty the same way you do, and
13 the court granted summary judgment denied
14 it based on the language I'm going to show
15 you in this agreement.
16     A     It was not just breach of
17 fiduciary duty.  It was breach of contract
18 as well.
19     Q     I understand.  We can look
20 through and you can tell me which contract
21 you believe, but for the time being, I'm
22 focusing on your breach of fiduciary duty
23 claim.  Okay?
24     A     Great, yeah.
25     Q     I'm going to turn to the second

KIMBROUGH v.
PROVIDENT TRUST GROUP                Document 50-1        Filed 07/15/25        Page 17 of 44 PageID                Joey Kimbrough
                                                         #: 286                                                   July 08, 2025

Case 4:24-cv-00342-JRS-MJD        Document 50-1        Filed 07/15/25        Page 17 of 44 PageID

Page 58

1    page, Article 8, Section 03, Subsection A.
2    It is on the bottom right-hand column.
3              And do you see where it starts:
4    By performing services under this
5    agreement, we are acting as your agent.
6    You acknowledge and agree that we are not
7    your fiduciary and have no fiduciary duties
8    to you or with respect to your account, and
9    nothing in this agreement shall be
10   construed as conferring fiduciary status
11   upon us.
12             Do you see that?
13       A    Plaintiff objects on the grounds
14   of Rule 401 through 403 of the Federal
15   Rules of Evidence.
16             The information sought is not
17   relevant to any claim or defense in this
18   action and/or its probative value
19   substantially outweighed by the danger of
20   unfair prejudice, confusion of the issues
21   or undue delays.
22             Plaintiff cousin not waive this
23   objection and reserves the right to
24   challenge its admissibility at trial.
25             That objection withstanding, the

Page 59

1    plaintiff will answer as follows:
2              How can I testify on another
3    case that's completely irrelevant to my
4    case. I've not been pressed with anything
5    that says from your client that I've read
6    or understood or signed on behalf of -- I
7    could care less about this case in the
8    Northern District of New York.
9        Q    Okay.
10       A    It has nothing to do with my
11   case.
12       Q    Much the same as all the people
13   you found on Google had nothing to do with
14   your case?
15       A    I -- it is nothing to do with my
16   case, no. But their heartburn that they've
17   outlined --
18       Q    No, that was -- that was it.
19   That was all I was asking.
20       A    Okay, yeah.
21       Q    Do you understand that this
22   agreement, Exhibit 16 --
23       A    Alleged agreement.
24       Q    Right. Is a copy of the IRA
25   custodial account agreement, the same one

Page 60

1    that you agreed to, Dr. Palumbo also agreed
2    to, and he tried to assert a breach of
3    fiduciary duty and the Court told him, as a
4    matter of law, he loses.
5              Do you understand that?
6        A    I understand you say that, but
7    that's a completely different case that's
8    not being trialed here right now. It's
9    irrelevant to you or I. I have no idea
10   what Dr. Palumbo or whomever you said, his
11   claims were. It has nothing to do with my
12   case, sir.
13       Q    Do you recall ever receiving a
14   custodial agreement for a traditional IRA
15   from Provident Trust Group?
16       A    I do not recall.
17       Q    Even though you signed saying
18   you did?
19       A    You're alleging that I signed on
20   a noncertified -- yeah, it's not been
21   authenticated. I thought we already got
22   past that. You're saying that I already
23   signed it. Your client has not put any
24   evidence forth that I have received,
25   signed, or any other means.

Page 61

1        Q    Mr. Kimbrough, you said it
2    appeared to be your signature.
3        A    I did say it appears to by my
4    signature, but you could have cut and
5    pasted that signature on there. I have no
6    idea.
7        Q    Where would we have gotten your
8    signature?
9        A    I have no -- well, probably from
10   court documents. You probably get them off
11   of the docket. I have no idea where you
12   could have gotten it.
13       Q    So you believe that in December
14   of 2011, Provident Trust Group got your
15   signature off a court docket?
16       A    I didn't even know Provident
17   Trust Group. It was Guidant Financial is
18   who I signed up with. And I haven't seen
19   anything where I had done otherwise.
20       MR. SLOCUM: Let's take a short
21   break.
22       THE WITNESS: Okay.
23       MR. SLOCUM: Let's do 10 minutes
24   or so. So we'll come back at 20 past
25   the hour.

Page 62

1      THE VIDEOGRAPHER: The time is
2  1:09 p.m.  We are going off the
3  record.
4          (Recess taken 1:09 p.m.)
5          (Resumed 1:21 p.m.)
6      THE VIDEOGRAPHER: The time is
7  1:21 p.m. and we're back on the
8  record.
9  BY MR. SLOCUM:
10     Q     All right.  Mr. Kimbrough, do
11  you understand that you're still under
12  oath?
13     A     I do understand, yes.
14     Q     Did you speak with anyone during
15  the break about either this lawsuit or this
16  deposition?
17     A     No, there's no need.
18     Q     Have you ever spoken to anyone
19  else about this lawsuit?
20     A     To the best of my knowledge, no,
21  other than my wife.  But I would assume
22  that that's just kind of one and the same
23  since we're married, right.
24     Q     Well, I'm not going to comment
25  on your marriage, sir.

Page 63

1      A     Yeah.  I'm talking about state
2  law, in particular.
3      Q     Okay.  When you say that, what
4  did you discuss with your wife about this
5  lawsuit?
6      A     Just the fact that it's ongoing.
7      Q     Okay.  I'm going to mark as
8  Exhibit 17 Provident's document production,
9  and it's Bates numbered Provident 1 through
10  490.
11         And again, I will share all of
12  these after the deposition.  And I may need
13  to set up a secure link.  We'll see.
14         (Exhibit 17, Provident's
15         document production, Bates Provident 1
16         through 490, was remotely introduced
17         and provided electronically to the
18         reporter, as of this date.)
19  BY MR. SLOCUM:
20     Q     In any event, all right, can you
21  see what's up on the screen, Mr. Kimbrough?
22     A     I do.
23     Q     Okay.  Starting with page
24  Provident 2 to Provident 3, that's a
25  two-page document, beneficiary form,

Page 64

1  change/update information.  It's stamped
2  September 26, 2018.
3          Do you recall filling out this
4  document to name your -- I assume Lisa is
5  your wife?
6      A     Plaintiff objects to the
7  introduction of this exhibit on the grounds
8  that it has not been properly authenticated
9  pursuant to Federal Rules of Evidence 901
10  and 902.
11         Plaintiff does not waive this
12  objection and reserves the right to
13  challenge its admissibility at trial.
14         Subject to this objection,
15  plaintiff will proceed to address the
16  exhibit as requested.
17         I do not recall this document,
18  no.
19     Q     Does that appear to be your
20  handwriting on page Provident 2?
21     A     It appears that it could be my
22  handwriting.
23     Q     Do you deny that it's your
24  handwriting?
25     A     I do not affirm that it's my

Page 65

1  handwriting.
2      Q     Let's keep going on.
3          Do you recall receiving this
4  production of documents from Provident,
5  Mr. Kimbrough?
6      A     I did not recall receiving any
7  production of documents from Provident.
8  And quite honestly, I meant to speak to you
9  about that thumb drive you sent me, which
10  may include those documents, didn't have
11  any files on it.
12     Q     All right.  I will check with my
13  IT department.  I don't believe that's
14  correct.  That's the first I'm hearing of
15  it.
16     A     Well, I wouldn't lie to you,
17  sir.  I just found this out a couple of
18  days ago and I meant to send you an email
19  and it kind of slipped my mind, but now you
20  know.
21     Q     Okay.  I appreciate that.  I
22  will look into that.
23     A     Thank you.
24     Q     You did receive a thumb drive?
25     A     I do.  I have it right here on

**Page 66**

1  the desk, but it's blank.
2     Q    All right.  Did it prompt you to
3  enter a password?
4     A    It did not prompt me to enter a
5  password, no.
6     Q    All right.  I'll look into that.
7     A    Okay.
8     Q    I realize I'm moving a little
9  quickly, but have you recognized any of the
10 documents?  We're up to page 233.
11    A    I have not.  I cannot confirm
12 that I recognize any of these documents,
13 no.
14    Q    Well, for example, page 233
15 through 237 looks to be an account
16 statement from the second quarter of 2022.
17         Do you recall receiving that
18 account statement?
19    A    I do not recall having received
20 that account statement, no.
21    Q    Do you deny that you were sent
22 that account statement?
23    A    I will not affirm that I
24 received that and I haven't seen any
25 evidence from your client indicating

**Page 67**

1  otherwise.
2     Q    That wasn't quite my question,
3  sir.  I said, do you deny it?
4     A    I will not deny, nor affirm on
5  this document that's clearly outside of
6  Federal Rules of Evidence 901 and 902 as
7  being non-certified and not authenticated
8  from your client.
9         I hope that answers your
10 question.
11    Q    Again, sir, one of the key
12 points of this deposition is to clarify
13 whether you acknowledge that a particular
14 document is what it is.
15         That is a valid form of
16 authentication.  That's how depositions
17 work across this country every day.
18    A    And I am clearly answering your
19 question.  It is not authenticated, it is
20 not certified, and I am not going to deny
21 or affirm that it's a document that I
22 received.  I have no evidence to tell me
23 otherwise.
24    Q    Mr. Kimbrough, at some point if
25 you refuse to cooperate, I'm going to have

**Page 68**

1  to take up a motion with the judge to
2  compel you to testify.
3         Do you understand?
4     A    I'm 100 percent testifying and
5  this transcript will show that I'm
6  answering every one of your questions,
7  counsel.
8     Q    I respectfully disagree.
9     A    Well, there's going to be things
10 that you and I are going to have to agree
11 to disagree on.  I agree.  And if you need
12 to get the Court involved, by all means.
13 They're going to see that I'm answering
14 every question with the proper objection on
15 the record.
16    Q    We're up to page 379.
17         This is a deposit submission
18 form.  I will zoom in a little bit so it's
19 easier for you to see.  It's stamped August
20 27, 2019.  It says account owner
21 information, Joey D. Kimbrough.  That's
22 your name, correct?
23    A    That is my name, yes.
24    Q    Okay.  It's dated August 22,
25 2019.  There is a contribution amount of

**Page 69**

1  $484.91 and it is signed Joey Kimbrough.
2         Do you see that?
3     A    I do see that.
4     Q    That's your signature, correct?
5     A    It appears to be my signature.
6     Q    Do you deny signing this
7  document?
8     A    I deny based off of the
9  objection that this exhibit has not been
10 properly certified or authenticated.  I
11 have no idea where this came, and I do not
12 recall, and I am not going to agree to
13 something that I do not recall the
14 authenticity.
15         Now, your client can send this
16 certified and authenticated, and maybe that
17 would give me the assurance that it's real.
18 But you putting something on the screen and
19 asking me to deny or not is not going to
20 get me to change that answer.
21    Q    This one appears to be upside
22 down, so let me switch it real quick.  So
23 now we are up to Provident 361 and 362.
24         This is a direction of
25 investment form.

Page 70

1        Do you see that?
2    A    I do see that, yes.
3    Q    Okay.  And it is dated at the
4  bottom of the second page under account
5  owner agreement and authorization 4/28/15.
6        Do you see that?
7    A    I do see that, yes.
8    Q    And the name Joey Kimbrough.
9        Do you see that?
10    A    I do.
11    Q    And there's a signature there,
12  correct?
13    A    There is.
14    Q    That's your signature, correct?
15    A    It appears to be my signature.
16    Q    Is it your contention, sir, that
17  for over a decade Provident was just
18  forging account documents on your behalf?
19    A    I'm not putting any type of --
20  well, the only fraud that I've introduced
21  is in my complaint that's on the docket
22  right now that they've requested -- they
23  said that I requested an in-kind
24  distribution when I didn't.
25        I'm not -- I have no idea what

Page 71

1  they've done in the last decade, but I do
2  know that they committed fraud when they
3  said that I requested something that I
4  didn't.
5        I hope that answers your
6  question.
7    Q    Okay.  Do you have any
8  recollection of filling out and signing
9  this direction of investment form at
10  Provident 361 to 362?
11    A    I do not have a recollection,
12  no, sir.
13    Q    Do you deny filling out and
14  signing this direction of investment form?
15    A    I've already stated, it's been
16  asked, it's been answered.  I can read the
17  objection again.
18        This is not certified, it's not
19  authenticated.  You're asking me to deny or
20  otherwise something that I cannot do, and
21  I'm not going to.  But I'm telling you that
22  it appears to be my signature, but it's not
23  been authenticated and certified by your
24  client.
25    Q    Are you unable to authenticate

Page 72

1  your own signature?
2    A    On a document that I'm not
3  confident in the -- the validity of, yes,
4  absolutely.  I'm incapable of agreeing to
5  something that I had no idea if it's valid
6  or not because it's not been certified or
7  authenticated by your client.
8    Q    That wasn't my question, sir.
9        My question is very simple.  Do
10  you recognize your own signature?
11    A    And I've answered that a
12  preponderance of times.  I do recognize my
13  signature, but I'm not telling you that I
14  signed it on that date at that time on a
15  document that's not been certified or
16  authenticated.  I have no idea where this
17  came from.
18    Q    If, hypothetically --
19    A    I'm not going to play
20  hypotheticals.
21    Q    No, no.
22    A    I'm not going to do that.
23    Q    Sir, I get to ask the questions.
24  If --
25    A    Ask away.

Page 73

1    Q    If, hypothetically, we handed
2  you an affidavit from the highest-ranking
3  officer at Provident Trust saying that this
4  document is a direction of investment form
5  that Joey Kimbrough signed on April 28,
6  2015, then you would think it's
7  authenticated and you'd say, well yeah,
8  sure, I signed it?
9    A    Plaintiff objects on the ground
10  of Rules 401 through 403 of the Federal
11  Rules of Evidence.
12        The information sought is not
13  relevant in this hypothetical example that
14  Attorney Slocum is pushing forward to any
15  claim or defense in this action or its
16  probative value is substantially outweighed
17  by the danger of unfair prejudice,
18  confusion of the issues, or undue delay.
19        Plaintiff does not waive this
20  objection and reserves the right to
21  challenge its admissibility at trial.
22        That objection withstanding, the
23  plaintiff will answer as follows:
24        If you would like to get the
25  highest-ranking official to get an

Page 74

1   affidavit, we can have a conversation on
2   that, sure, I would love to do that, if
3   they're going to put something forward
4   under the penalty of perjury, just as I
5   have done.
6       Q    You understand that you're
7   testifying under the penalty of perjury,
8   correct?
9       A    I one hundred percent do, yes,
10  absolutely.
11      Q    Okay.
12      A    Which is why I'm not answering
13  your line of questioning.
14      Q    And yet you are -- and yet you
15  are purposefully dissembling.
16           My question is very simple.  Is
17  that your signature?
18      A    It is appears to be.
19      Q    All right.  Next two pages,
20  Provident 363 and 364.  This is a
21  subscription page for JCM Property Group,
22  LLC.
23           You said before --
24      A    I've never heard of JCM.
25      Q    Sorry?

Page 75

1       A    I've never heard of JCM.
2       Q    I'm sorry.  JMC.
3       A    Okay.  Correction to the record.
4       Q    This is a subscription page for
5   JMC Property Group, LLC, correct?
6       A    It appears to be.
7       Q    Okay.  You are the sole member
8   of JMC Property Group, correct?
9       A    At the beginning we established
10  that, yes.
11      Q    Okay.  So if you're not filling
12  this out, who would be?
13      A    Plaintiff objects to the
14  introduction of this exhibit on the ground
15  that it has not been properly authenticated
16  pursuant to the Federal Rules of Evidence
17  901 and 902.
18           Plaintiff does not waive this
19  objection and reserves the right to
20  challenge its admissibility at trial.
21           Subject to this objection, the
22  plaintiff Will proceed to address the
23  exhibit as requested.
24           I have no idea if this is
25  accurate.  It's not been certified.  It's

Page 76

1   not been authenticated.  It appears that it
2   has my signature all over it as a manager,
3   as an account owner.  I have no idea what
4   this is.
5       Q    Okay.  You are and always have
6   been the sole member of JMC Property Group,
7   LLC, correct?
8       A    That is correct.
9       Q    Meaning there's no other person
10  on this planet who could authenticate this
11  document other than you, correct?
12      A    No, that is not correct, because
13  I'm not the one that's pushing this forward
14  as evidence.  Whoever pushed it forward as
15  evidence, your client, should be the one
16  that's certifying, authenticating that this
17  is accurate.
18           You used the hypothetical
19  example of the highest-ranking officer.
20  Get it on an affidavit and we'll talk about
21  this.
22           But right now, you're asking me
23  to agree that this is valid when I'm
24  telling you, I don't know.  I'm not for
25  sure about whether this is.

Page 77

1           But your question, am I the only
2   member, yes, we -- that was asked and
3   answered at the beginning of this.  I'm
4   surprise it slipped your mind.
5       Q    It did not slip my mind.
6       A    What you're asking me to do
7   here, I have no idea.
8       Q    It has not slipped my mind at
9   all.  I think you're missing --
10      A    Great.
11      Q    -- my point, whether
12  purposefully or not, you either recognize
13  your own signature or you are dissembling
14  under oath.
15           Do you understand?
16      A    I have stated a -- a
17  preponderance of times, it appears to be my
18  signature, but this is a non-certified and
19  non-authenticated document from your client
20  and you're acting as a witness right now
21  trying to get me to answer something that
22  I'm clearly telling you it appears to be my
23  signature.
24           That's as far as you're going to
25  get from me on this -- this exhibit that

Page 78

1    you're pushing forward as the advocate that
2    is clearly in contravention to Federal
3    Evidence 901 and 902.
4        Q    We may just have to have the
5    court weigh in on that, sir.
6        A    I think that would be a great
7    idea.
8        Q    Provident 385 to 386, another
9    direction of investment form.  This one
10   dated 1/27/12.
11            Do you see that?
12       A    I do.
13       Q    And there's a signature next to
14   it, Joey Kimbrough.
15            Do you see that?
16       A    I to.
17       Q    Do you recognize that to be your
18   signature, sir?
19       A    It appears to be my signature.
20       Q    387, this is an IRS Form SS4
21   application for employer identification
22   number.  JMC Property Group, LLC, the
23   address you gave earlier, name of the
24   individual officer, Joey D. Kimbrough, IRA
25   at the bottom dated 2/19/11 and signed Joey

Page 79

1    Kimbrough.
2            Do you see that?
3        A    I do.
4        Q    Is that your signature on page
5    387?
6        A    Plaintiff objects to the
7    introduction of this exhibit on the grounds
8    that it has not been properly authenticated
9    pursuant to Federal Rules of Evidence 901
10   and 902.
11           Plaintiff does not waive this
12   objection and reserves the right to
13   challenge its admissibility at trial.
14           Subject to this objection,
15   plaintiff will proceed to address the
16   exhibit as requested.
17           It appears to be my signature on
18   this document.
19       Q    All right.  We are up to
20   Provident 439.  This is a check number
21   1130.  The account holder is JMC Property
22   Group, LLC.  It is dated 11/8/14, paid to
23   the order of Provident Trust Group, $105.
24   There is a memo for annual fee and it's
25   signed Joey Kimbrough.

Page 80

1        Q    Do you see that?
2        A    I do.
3        Q    This is a check that you signed
4    on November 8, '14 for $105 to pay your
5    annual fee to Provident Trust Group,
6    correct?
7        A    It appears to be.
8        Q    Okay.  Would Provident Trust
9    Group have had access to your checks, your
10   checkbook, had you not made out this check
11   to Provident?
12       A    I would not think that they
13   would.
14       Q    Okay.
15       A    But I can't answer that.
16       Q    Have you ever reported your
17   checkbook stolen?
18       A    I do not recall.
19       Q    To your knowledge, has your
20   checkbook ever been stolen?
21       A    I do not recall.  It may have.
22       Q    All right.  Provident 441, this
23   is again a check.  This one is dated
24   November 15 of 2015 made out to Provident
25   Trust Group.  JMC Property Group, LLC is

Page 81

1    the payor.  It is for account fees and
2    signed by Joey Kimbrough.
3            Is that your signature, sir?
4        A    It appears to be my signature on
5    this non-certified, non-authenticated
6    document with the same objection standing.
7        Q    Provident 443 is another check
8    made out by JMC Property Group to Provident
9    Trust Group, this one in November 2016,
10   signed by Joey Kimbrough.
11           Is this your signature?
12       A    It appears to be my signature.
13       Q    Provident 445.
14           What is JMC Waterworks, LLC?
15       A    It was an LLC that I had owned,
16   an auto repair center.
17       Q    And why were you writing
18   checks -- well, first of all, do you
19   recognize the signature on this check?
20       A    I do not, but I would guess it
21   appears to be Kari Chandler, maybe.
22       Q    Okay.  Do you know a Kari
23   Chandler?
24       A    I do.
25       Q    Okay.  Who is she?

Page 82

1    A    She was someone who worked for
2  me at that business.
3    Q    She no longer does?
4    A    No.  The business has been
5  closed for years.
6    Q    Do you know why she would have
7  been writing a check in December of 2017 to
8  Provident Trust Group?
9    A    I have no idea, no.
10   Q    Did you ever instruct her to
11 write a check to Provident Trust Group?
12   A    To the best of my knowledge, I
13 did not, no.
14   Q    Provident 448, there's another
15 check.  This one is number 1007.  It's
16 dated 11/19/20 from JMC Property Group to
17 Provident Trust, $250 for IRA trust fee
18 2021.
19        Do you see that?
20   A    I do see that.
21   Q    And is that your signature on
22 the check, sir?
23   A    It appears to be my signature on
24 this non-certified, non-authenticated
25 document that you've pushed through for

Page 83

1  your client.
2    Q    Provident 451 is a rollover
3  certification.  It is signed at the bottom
4  there 4/28/15.
5        It that your signature, sir?
6    A    It appears to be my signature on
7  this non-certified, non-authenticated
8  document that is clearly in contravention
9  to Federal Rule of Evidence 901 and 902.
10   Q    Were you aware in April of 2015
11 that $78,790.92 of your retirement money
12 was being rolled over to Provident Trust
13 Group?
14   A    If the document is valid, I
15 would have had to have been aware of that,
16 wouldn't I?
17   Q    I would think so.
18   A    Yeah.
19   Q    And you keep a close eye on your
20 retirement money, I assume?
21   A    Well, not as close as I probably
22 should, no.
23   Q    Document 466 is another IRA
24 rollover certification.
25        Do you see that?

Page 84

1    A    I do see that.
2    Q    It's dated 12/29, looks
3  like '11.  Would you agree with that,
4  12/29/11?
5    A    It appears that way.
6    Q    And is that your signature?
7    A    It appears to be my signature on
8  this non-certified, non-authenticated
9  document that the defendant has pushed
10 forward.
11   Q    All right.  Prior to today, have
12 you ever raised any concerns that anyone at
13 Provident Trust Group was forging your name
14 to documents?
15   A    Not that I can recall, no.
16   Q    I'm going to put up what I've
17 marked as Exhibit 8.
18        (Exhibit 8, Past Due Notice
19        dated January 9, 2024, was remotely
20        introduced and provided electronically
21        to the reporter, as of this date.)
22 BY MR. SLOCUM:
23   Q    And can you see that, sir?
24   A    I can, yes.
25   Q    All right.  This is a first

Page 85

1  notification past due notice.  The Bates
2  labels are Provident 70, 71, and 264.  This
3  is a notice dated, if you look at the third
4  page, January 9, 2024.
5        Do you see that?
6    A    I do.
7    Q    And it says there's a balance
8  past due of $150.
9        Do you see that?
10   A    I do.
11   Q    Do you understand where that
12 balance past due of $150 came from?
13   A    I do not.
14   Q    All right.  Let's go back to
15 number 6, and we can explain it.
16   A    Okay.
17   Q    So this is Exhibit 6.
18        Again, it's the Q1 of 2024
19 statement for your Provident Trust account.
20   A    It shows zero.
21   Q    Well, it shows zero
22 contributions, zero rollover contributions,
23 zero conversions, zero distributions.
24   A    So zero.
25   Q    No, that's not remotely what

Page 86

1  that says.  If you go to beginning cash
2  balance on page 277, it had a beginning
3  cash balance of $205.
4          Do you see that?
5      A    I do.
6      Q    Okay.  And if you recall, you
7  had received a number of notices over the
8  years that there was a minimum $500 cash
9  balance required.
10          Do you remember seeing those?
11      A    No, I do not remember seeing
12  those.  We've already established that.
13      Q    Do you recall seeing Exhibit 15?
14      A    I do not, no.
15      Q    All right.  I'll pull it up for
16  you again.
17      A    Okay.
18      Q    Do you remember this exhibit,
19  second notice of $500 minimum balance
20  requirement?
21      A    I remember objecting to this
22  that it was a non-certified,
23  non-authenticated document that you were
24  pushing forward.  Yes, I do remember that.
25      Q    All right.  So you do remember

Page 87

1  seeing these notices today.
2      A    No, I -- no, no, no.
3      Q    Do you remember seeing them
4  today?
5      A    I remember you putting them up
6  and me objecting to them.
7      Q    How could you have objected if
8  you didn't see them?
9      A    You put it on the screen.
10      Q    So the simple fact that I put
11  something on the screen is grounds for
12  objection?
13      A    Yeah, because I have no idea if
14  they're real documents or not.  They've not
15  been certified or authenticated.  You
16  putting it on the screen and asking me to
17  talk about its authenticity is -- I
18  objected.
19      Q    Let's go back to number 8.
20  There's the balance past due of $150 again.
21  I'm sorry, not number 8.
22          Number 6, the Q1 2024 account
23  statement, there is account cash balance,
24  $205.  There was on 1/8/2024 an annual $295
25  fee paid from account cash balance leaving

Page 88

1  zero cash account.
2          Do you see that?
3      A    I do see that.  Can you tell me
4  where that came from?
5      Q    This is the statement for your
6  Provident Trust account for the first
7  quarter of 2024.
8      A    Okay.  Can we bring that up
9  showing the $295 was something that we all
10  agreed on?  Because I'm confused.
11          Honestly, I'm truly trying --
12  maybe I'm not the sharpest guy in the
13  world, but you're showing $150, then you're
14  showing zero, then you're showing $295 was
15  due.  All I'm seeing is -- I didn't know
16  anything -- zero cash balance.
17      Q    Well, so here is, on page 278, a
18  good breakdown.  Okay?
19          So there was a fee paid of $295
20  in 2024, $205 total fees paid, and then
21  outstanding invoices.  Annual fee for the
22  period January 6, 2024 to January 5, 2025,
23  $305.
24          There was only $205 in your
25  account, meaning there remained $100 in

Page 89

1  fees that were not paid.  And because you
2  had not paid them by the end of the
3  quarter, there was a $50 late fee.
4          Do you see that -- or I'm sorry,
5  due date 1/6/2024.  Total fees as of
6  4/13/2024, $150.
7          Do you see how we got there?
8      A    No, I don't, not even close.
9  Because I'm seeing the $295 fee.  I'm still
10  up at the top -- you're going to have to
11  pardon me.  I'm not that sharp, evidently.
12  And it's showing an amount cash from the
13  account of $205.  I'm not seeing anywhere
14  where it says there's a $95 difference or
15  $95 is owed or -- I just don't see that.
16          And then we're getting some
17  crazy number of $305 that's thrown out.
18  Where did that come from when the fee is
19  $295, they're saying?
20          I just -- and did this come from
21  Guidant?  I don't understand where this
22  came from, this uncertified,
23  unauthenticated document that you're
24  putting forward.  I just don't see the math
25  adding up.

KIMBROUGH
PROVIDENT TRUST GROUP

Case 1:25-cv-00342-JRS-MJD    Document 50-1    Filed 07/15/25    Page 25 of 44 PageID
#: 294

Joey Kimbrough
July 08, 2025

Page 90

1     Q     Okay.
2     A     I'm trying to understand here.
3  So, yeah, okay.  There's another one.
4  We're just pulling numbers out from all
5  kinds of places, Mr. Slocum.
6     Q     No, I disagree, sir.
7     A     Okay.
8     Q     This was the first notice again.
9  So this is Exhibit 8.
10    A     That I didn't receive.
11    Q     So you claim.
12    A     Well, there's no proof that I
13 received it.  Show me that affidavit from
14 the highest-ranking officer that says that
15 I was delivered and signed for this
16 document.
17    Q     Mr. Kimbrough, you alleged in
18 your complaint -- you alleged in other
19 documents, and we'll get to that, that you
20 received email notifications from
21 Provident.  You've admitted --
22    A     On July 9th where, yeah, the
23 fraud was committed by saying that I
24 requested something that I clearly did not.
25 Maybe I'm requesting that -- I have no idea

Page 91

1  what you're trying to get at.
2     Q     So you're saying that for over a
3  decade, you never received any emails from
4  Provident about your account until
5  magically on July 9 you receive an email.
6     A     I'm saying --
7     Q     The only one you ever got.
8     A     I'm saying the trier of facts
9  and law that you and I are going to base
10 our decisions off of --
11    Q     No, no, no, no.
12          Mr. Kimbrough, my question is,
13 is that -- is that your testimony?
14    A     There's no evidence that I've
15 received anything.
16    Q     Mr. Kimbrough, yes or no?  You
17 are the --
18    A     And I --
19    Q     -- provider of the evidence.
20 It's your claim.
21    A     And I am telling you, there is
22 no evidence to say that I received anything
23 from Provident for a decade as you're
24 trying to be argumentative here as an
25 advocate.

Page 92

1     Q     I am not.  Trust me, I'm --
2     A     You are not a witness with
3  firsthand knowledge here, Mr. Slocum.
4     Q     I am not presenting my firsthand
5  knowledge.  I am asking yours and you're
6  refusing to give it.
7     A     I'm giving you all of it and I'm
8  telling you I'm confused by this
9  nonsensical document that's not certified
10 or authenticated that has all kinds of
11 goofy numbers on it.
12          You're -- evidently, you're not
13 very good at explaining that, but I'm
14 seeing $295, I'm seeing $205.
15          There's nothing that's adding up
16 to say that there's a balance due on this
17 document that I'm saying I never received
18 and no evidence to say otherwise.
19    Q     Did you ever dispute owing
20 annual fees to Provident?  We went through
21 at least a half a dozen checks where you
22 were sending them annual fees.
23    A     You're alleging that I sent
24 fees.  You're alleging that it's my
25 signature that sent the fees.  There is no

Page 93

1  evidence that you have presented other than
2  trying to get me to admit to something that
3  I cannot admit.
4     Q     Exhibit 8.  Payment overdue,
5  first notice, January 9, 2024 --
6     A     First notice is the key there,
7  first.
8     Q     Provident -- yes, and we're
9  going to get to the second and the third,
10 sir --
11    A     No, the whole decade you were
12 just rattling off about --
13    Q     Mr. Kimbrough -- Mr. Kimbrough,
14 if you continue like this, we're going to
15 stop the --
16    A     You're not going to threaten me,
17 sir.  I could care less about your threats.
18    Q     I'm not threatening you, sir,
19 no, no, no.
20    A     You can do whatever you think
21 you need to do.  I'm answering all your
22 questions.  You're not presenting anything
23 that's got any evidentiary value.
24          You're saying this is the first
25 notice that I ever got here on January of

Page 94

1  2009.  And then you're going back and
2  saying that I've received stuff for a
3  decade.
4           This -- if this is the first
5  notice, and it's clearly outlined there on
6  this non-certified, non-authenticated
7  document that you're asking questions on,
8  then why are you talking about anything
9  prior to January of 2024, sir?
10      Q    Because, quite frankly, sir, I
11  don't think you're being truthful.
12      A    I could care less what you
13  think.  There's no evidence to say that I'm
14  not being truthful.  I'm 100 percent
15  truthful.
16      Q    You --
17      A    I don't think you're being
18  truthful.
19      Q    Mr. Kimbrough, I'm not the one
20  under oath, for starters.
21      A    But you're sure acting like
22  you're a witness.
23      Q    No, I am not.  I am not.
24  Believe me.
25      A    So what is your question?

Page 95

1  Please pose the question.
2      Q    My question is, do you see the
3  document in front you, Bates labeled --
4      A    I see --
5      Q    -- Provident 264, January 9,
6  2024, payment overdue, first notice,
7  balance past due, $150?
8      A    I see that document in front of
9  me.
10      Q    Okay.  Do you --
11      A    And it's not certified or
12  authenticated.
13      Q    That's not my question.
14           Do you deny receiving this?  I
15  don't want to hear hypothetical speculative
16  things about other stuff.
17           Do you deny receiving this
18  document?
19      A    I am not going to deny or affirm
20  that this document that's not certified and
21  unauthenticated that -- you're trying to
22  get me to agree to something, clearly, that
23  I'm telling you --
24      Q    I'm trying to get you to testify
25  to facts, sir.

Page 96

1      A    I have no recollection of this.
2  The fact is, I have no recollection.
3      Q    So that means you cannot deny
4  receiving it?
5      A    I cannot affirm receiving it.
6      Q    You cannot --
7      A    And your client has not put any
8  evidence forward.  You keep showing that I
9  have received it.
10      Q    No, you're not answering my
11  question, sir.
12           If you have no recollection one
13  way or the other, that means you cannot
14  deny receiving it.
15      A    And I cannot affirm.
16      Q    Let's try number Exhibit 9.
17      A    Okay.
18           (Exhibit 9, Past Due Notice
19      dated February 6, 2024, was remotely
20      introduced and provided electronically
21      to the reporter, as of this date.)
22  BY MR. SLOCUM:
23      Q    Past due notice, second
24  notification, pages Provident 64, 65 and
25  263.  This one is dated February 6, 2024.

Page 97

1  Payment overdue, second notice.
2           Do you see that?
3      A    I do see that.
4      Q    $150.  This one says:  Dear Joey
5  D. Kimbrough, we value your business and
6  would like to resolve the outstanding
7  balance on your account.  However, if
8  payment is not made within 10 days, your
9  past due invoice will be referred to an
10  outside collection agency.
11           Do you see that?
12      A    I do see that.
13      Q    Okay.  You received this
14  notification, correct?
15      A    I cannot affirm that I received
16  this notification.  I do not recall.
17      Q    Do you have any facts on which
18  you can base a denial that you've received
19  this?
20      A    I don't have any facts that I
21  can base a denial or an affirmation, and
22  your client has not provided any evidence
23  to say that I did receive it.
24           And this document is clearly in
25  violation as an exhibit that's not been

## Page 98

1  certified or authenticated in contravention
2  to Federal Rule of Evidence 901 and 902.
3      Q    Again, sir, I'm not going to try
4  to give you a lesson on how the Rules of
5  Evidence work.
6      A    I'm not going to -- I don't need
7  your lesson, sir.  You're talking down to
8  me now.
9      Q    I'm not.  I'm not.  It is your
10 obligation to answer my questions
11 straightforwardly and truthfully.
12     A    And I have.
13     Q    Do you deny receiving this
14 document?
15     A    I cannot deny and I cannot
16 affirm.
17     Q    Sir, sir --
18     A    I'm not -- there is no evidence
19 to say that I've received this document.
20          Does that make you feel better?
21     Q    I would like an answer to my
22 question.  It is a very --
23     A    I just answered your question.
24     Q    No, no.
25     A    I have.  I have objections on

## Page 99

1  the record.
2      Q    Mr. Kimbrough, objecting isn't
3  answering.
4      A    There's no evidence that says
5  that I have received this document, sir.
6  And I am not going to confirm something as
7  a second notice.  And then you're jumping
8  back a decade, being a wisenheimer.  It's
9  just not -- I'm not going to do that.
10          So if you want tot play games,
11 continue going down this path.  I'm
12 answering your questions, Mr. Slocum.
13     Q    You are not.
14     A    Oh, I am, 100 percent.
15     Q    No --
16     A    I'm putting the objections on
17 the record and --
18     Q    No, no, no.  Sir, you need to
19 let me speak.
20     A    I let you speak all day long.
21     Q    You are talking in response to
22 my questions, but you're not answering
23 them.
24     A    I'm not answering them the way
25 you want me to answer them.

## Page 100

1      Q    No.  You're answering them
2  pursuant to --
3      A    I'm answering them.
4      Q    No, no.  Mr. Kimbrough, it's
5  very simple.  It's a yes or no question.
6      A    No, it's not.
7      Q    Yes, it is.
8      A    It's not that simple.
9      Q    Today, under oath, on the
10 record --
11     A    Yes.
12     Q    -- do you deny receiving this?
13     A    I deny that there is any proof
14 that I have received this.
15     Q    That is not an answer to my
16 question.  Do you deny receiving it?
17     A    I don't recall having received
18 it.
19     Q    That, again, is not an answer.
20     A    Oh, it's 100 percent an answer.
21     Q    No, it is not.
22     A    It is.
23     Q    No, it is not.
24     A    I do not recall having received
25 this notice and there is no evidence saying

## Page 101

1  that I signed for it.
2      Q    Let's try this one more time.
3      A    Sure.
4      Q    We are now up to Exhibit 10.
5      A    Okay.
6          (Exhibit 10, Past Due Final
7      Notice dated March 7, 2024, was
8      remotely introduced and provided
9      electronically to the reporter, as of
10     this date.)
11 BY MR. SLOCUM:
12     Q    Past due notice, final
13 notification.  Provident 76, 77, and 380.
14 The date of this one is March 7, 2024.
15          Do you see that?
16     A    I do.
17     Q    Payment overdue, final notice.
18          Do you see that?
19     A    I do.
20     Q    Balance past due, $150.
21          Do you see that?
22     A    I do.
23     Q    Did you receive this notice from
24 Provident?
25     A    I do not recall having received

## Page 102

1  this notice from Provident, no.
2       Q    Do you deny receiving this
3  notice from Provident?
4       A    I do not affirm that I received
5  this because there's no evidence that has
6  been presented to say that I've signed for
7  and received this.
8       Q    Mr. Kimbrough, you understand
9  that you have asserted claims against
10  Provident Trust Group, right?
11      A    Oh, 100 percent, for fraud, yes.
12      Q    Okay.  You understand that in
13  order to do that, the law requires that you
14  have evidence to support it?
15      A    Oh, I do.
16      Q    Okay.
17      A    100 percent.
18      Q    If you're unable to testify
19  about anything, what do you plan to base
20  your claims on?
21      A    The only thing that you're
22  doing, Mr. Slocum, is trying to establish
23  right now that there is an account.  Let's
24  agree that there is and let's start talking
25  about the fraud that was committed, saying

## Page 103

1  that I requested something.
2            This whole hocus-pocus trying to
3  get me to agree to something, which there
4  is no evidence to say that I haven't, I
5  have plenty of evidence saying that they
6  committed fraud.  I let them, in good
7  faith, know that they committed fraud.
8  They signed for, confirmed, and sent it
9  back to me that they committed fraud.
10      Q    Well, we'll talk about that when
11  the time comes.
12      A    We'll talk about it next
13  Tuesday.  But right now, it doesn't matter
14  if I had an account, didn't have an
15  account.  I signed up with Guidant
16  Financial.
17           I don't -- I can't tell you I
18  received something when I do not recall
19  having received it, Mr. Slocum.
20           First of all, my question was
21  not what you're saying in response.  That
22  was not my question.
23      A    It one hundred percent was.
24      Q    My question -- no, it was not.
25  It was not.

## Page 104

1       A    You were threatening that you
2  were going to get the Court involved and --
3       Q    And I still --
4       A    I'm answering your -- do it,
5  please.
6       Q    And I'll tell you this,
7  Mr. Kimbrough, we are finishing your
8  deposition, subject to court order if
9  necessary before Mr. Dacres testifies.
10      A    That's great.
11      Q    Do you deny receiving the
12  document marked Exhibit 10, final notice of
13  payment overdue?
14      A    I do not recall having received
15  this final notice of payment overdue.
16      Q    Do you deny receiving it?
17      A    I cannot affirm and I cannot
18  deny based off of my recollection.  I do
19  not recall having received it.
20           Clearly answering your question,
21  and I clearly objected to this exhibit.
22      Q    Let me -- let me clarify.
23           Exhibit 8, first notice of
24  overdue payment; Exhibit 9, second notice
25  of overdue payment; and Exhibit 10, final

## Page 105

1  notice of overdue payment, you cannot deny
2  having received all three of those notices?
3       A    I cannot affirm, nor deny that I
4  received these notices, you're correct.
5       Q    Fine.  You cannot deny.  Good.
6       A    Or -- because there's no
7  evidence that says that I have received
8  these.
9       Q    I'm not going to debate you on
10  that point, sir.  7/2024, final notice.
11  Dear Joey D. Kimbrough, the past due
12  balance on your account has not been
13  resolved.  If the balance is not paid
14  within 30 days, Provident Trust Group will
15  resign as your custodian and distribute
16  your assets.
17           Do you see that?
18      A    I to see that.
19      Q    The asset distribution may lead
20  to a taxable event according to the IRS and
21  possible IRS penalties.
22           Do you see that?
23      A    I do see that.
24      Q    All right.
25      A    I still don't see the math

KIMBROUGH v.
PROVIDENT TRUST GROUP

Joey Kimbrough
July 08, 2025

---

Page 106

1  adding up though.
2      Q      $305 minus $205 plus $50 is
3  $150.
4      A      There was $295 and -- yeah, I
5  don't see where this comes from either,
6  honestly.  Maybe if we can just show
7  that -- that custodial agreement where we
8  all agreed to that amount and so forth,
9  that would help, maybe you and I.
10     Q      I'm going to show you
11  Exhibit 11.
12            (Exhibit 11, Past Due Closing
13     Letter dated July 9, 2024, was
14     remotely introduced and provided
15     electronically to the reporter, as of
16     this date.)
17  BY MR. SLOCUM:
18     Q      Do you see this?
19     A      Yes, I do.
20     Q      Okay.  Past due closing letter,
21  July 9, 2024.
22            Now, you did receive this one,
23  correct?
24     A      I don't think I did, no.  I
25  don't recall having received it.

---

Page 107

1      Q      Really?
2      A      I received an email from a
3  Jordan Dacres saying I requested an in-kind
4  distribution, which is not accurate, but I
5  don't recall having seen this, no.
6            Who is the signatory, Gloria?
7      Q      We talked about her earlier.
8      A      Okay, yeah.  You asked me if she
9  was a witness potentially.  No, I don't
10  recall having seen this.
11     Q      Do you deny receiving it?
12     A      I don't affirm having received
13  it on this exhibit that is clearly not
14  authenticated or certified as being
15  accurate.
16     Q      Do you have any update, sir,
17  with your wife's anticipated return with
18  your passport?
19     A      It's 2:11.  Would you like me to
20  text her to see if --
21     MR. SLOCUM:  Sure.  Let's take a
22     break.
23     THE WITNESS:  Okay.  Yeah, I'll
24     text her and I'll have an answer for
25     you whenever we come back.  How long,

---

Page 108

1  10 minutes or --
2      MR. SLOCUM:  Let's give it 15
3     minutes.
4      THE WITNESS:  Okay.  Very good.
5     Thank you.
6      THE VIDEOGRAPHER:  The time is
7     2:12.  We are off the record.
8            (Recess taken 2:12 p.m.)
9            (Resumed 2:28 p.m.)
10     THE VIDEOGRAPHER:  The time is
11     2:28 p.m. and we are back on the
12     record.
13  BY MR. SLOCUM:
14     Q      All right.  We are back from a
15  break, Mr. Kimbrough.
16            During the break, did you speak
17  to anyone about this case or this
18  deposition, other than your wife to ask her
19  for your passport?
20     A      No one other than the wife to
21  ask for the passport.
22     MR. SLOCUM:  Okay.  Nicolette,
23     would you mind doing what you need to
24     do with the passport?
25     THE COURT REPORTER:  You can

---

Page 109

1  just hold it up to the screen.
2      THE WITNESS:  Sure, yes.
3      THE COURT REPORTER:  Okay,
4     perfect.  Thank you very much.
5      THE WITNESS:  You're welcome.
6  BY MR. SLOCUM:
7      Q      And just to clarify, since your
8  passport does not have your address on it,
9  your address is 1712 Candy Court South,
10  Kokomo, Indiana 46902-4411.
11     A      That is correct, yes.
12     Q      And that's where you receive
13  your mail?
14     A      That's where I would receive
15  mail typically, yes.
16     Q      Have you ever had any problems
17  receiving mail at that address?
18     A      None that I can recall, but yeah
19  the U.S. Postal Service does make errors at
20  times.
21     MR. SLOCUM:  All right.
22     Mr. Kimbrough, during the break, we
23     further considered our position.
24            I'm going to be making a motion
25     with the judge to compel answers

---

Page 110

1  because, frankly, sir, I don't think
2  you're being responsive.
3      THE WITNESS:  Okay.  I
4  appreciate that.
5      MR. SLOCUM:  So I will be making
6  a motion.  Because of that motion, we
7  are going to be pushing off
8  Mr. Dacres' deposition until our
9  motion is resolved.
10     THE WITNESS:  Okay.
11     MR. SLOCUM:  So I'll send you an
12 email confirming all of that.
13 Nicolette, I know I didn't order
14 before.  Could I please get a rough
15 and an expedited?
16     THE COURT REPORTER:  Yes.  How
17 soon do you need the transcript?
18     MR. SLOCUM:  As soon as you can,
19 please.
20     THE COURT REPORTER:  I can do it
21 tonight or tomorrow morning.
22     MR. SLOCUM:  Either is fine.
23     THE COURT REPORTER:  Okay,
24 sounds good.  Thank you.
25     MR. SLOCUM:  Thank you.  All

Page 111

1      right.  We are off the record, pending
2      our motion, Mr. Kimbrough.  Thank you.
3          THE VIDEOGRAPHER:  The time is
4      2:30 p.m. and we're going off the
5      record.
6                    * * *
7
8
9          _____
10         JOEY KIMBROUGH
11
12 Subscribed and sworn to
13 before me this      day
14 of            , 20__
15
16 _____
   NOTARY PUBLIC
17
18
19
20
21
22
23
24
25

Page 112

1              REPORTER CERTIFICATE
2
3     I, NICOLETTE URZIA, do hereby certify:
4     That said deposition was taken at the
5  time and place herein named; and that the
6  transcript is a true record of the testimony
7  as reported by me, a disinterested person,
8  and was thereafter transcribed.
9     I further certify that I am not
10 interested in the outcome of the said
11 action, nor connected with, nor related to
12 any of the parties in said action, nor to
13 their respective counsel.
14    IN WITNESS WHEREOF, I have hereunto
15 set my hand this 8th day of July, 2025.
16
17
18
19         _____
20         NICOLETTE URZIA, CSR
21
22
23
24
25

Page 113

1              DEPOSITION ERRATA SHEET
2  Case Caption:
3              JOEY KIMBROUGH
4                  vs.
      PROVIDENT TRUST GROUP, LLC
5
6     DECLARATION UNDER PENALTY OF PERJURY
7
8     I declare under penalty of perjury
9  that I have read the entire transcript
10 of my deposition taken in the captioned
11 matter or the same has been read to me,
12 and the same is true and accurate, save
13 and except for changes and/or corrections,
14 if any, as indicated by me on the
15 DEPOSITION ERRATA SHEET hereof, with the
16 understanding that I offer these changes
17 as if still under oath.
18
19 SIGNATURE_____DATE:_____
20         JOEY KIMBROUGH
21 Subscribed and sworn to on the ____ day of
22 _____, 20__ before me,
   _____
23 Notary Public,
   in and for the State of _____
24
25

Page 114

```
1              DEPOSITION ERRATA SHEET
2
     Page No._____Line No._____Change
3    to:_____
     Reason for
4    change:_____
5
     Page No._____Line No._____Change
6    to:_____
     Reason for
7    change:_____
8
     Page No._____Line No._____Change
9    to:_____
     Reason for
10   change:_____
11
     Page No._____Line No._____Change
12   to:_____
     Reason for
13   change:_____
14
     Page No._____Line No._____Change
15   to:_____
     Reason for
16   change:_____
17
     Page No._____Line No._____Change
18   to:_____
     Reason for
19   change:_____
20
     Page No._____Line No._____Change
21   to:_____
     Reason for
22   change:_____
23
     SIGNATURE:_____DATE:_____
24         JOEY KIMBROUGH
25
```

Page 115

```
1              DEPOSITION ERRATA SHEET
2
     Page No._____Line No._____Change
3    to:_____
     Reason for
4    change:_____
5
     Page No._____Line No._____Change
6    to:_____
     Reason for
7    change:_____
8
     Page No._____Line No._____Change
9    to:_____
     Reason for
10   change:_____
11
     Page No._____Line No._____Change
12   to:_____
     Reason for
13   change:_____
14
     Page No._____Line No._____Change
15   to:_____
     Reason for
16   change:_____
17
     Page No._____Line No._____Change
18   to:_____
     Reason for
19   change:_____
20
     Page No._____Line No._____Change
21   to:_____
     Reason for
22   change:_____
23
     SIGNATURE:_____DATE:_____
24         JOEY KIMBROUGH
25
```

**$**

**$100** 88:25

**$105** 79:23 80:4

**$150** 85:8,12 87:20 88:13 89:6 95:7
  97:4 101:20 106:3

**$205** 86:3 87:24 88:20,24 89:13
  92:14 106:2

**$250** 82:17

**$295** 87:24 88:9,14,19 89:9,19 92:14
  106:4

**$305** 88:23 89:17 106:2

**$484.91** 69:1

**$50** 89:3 106:2

**$500** 42:17 43:21 86:8,19

**$78,790.92** 83:11

**$95** 89:14,15

**0**

**03** 58:1

**033152003** 14:21

**1**

**1** 29:3 30:3 63:9,15

**1.7** 29:15,23,25

**1/27/12** 78:10

**1/6/2024** 89:5

**1/8/2024** 87:24

**10** 61:23 97:8 101:4,6 104:12,25
  108:1

**100** 68:4 94:14 99:14 100:20 102:11,
  17

**1007** 82:15

**11** 84:3 106:11,12

**11/19/20** 82:16

**11/8/14** 79:22

**1130** 79:21

**116** 52:10

**12/29** 84:2

**12/29/11** 84:4

**12:05** 6:3

**14** 80:4

**15** 27:19 36:1 40:9,11 80:24 86:13
  108:2

**16** 56:16,24 59:22

**17** 63:8,14

**1712** 10:14 109:9

**1:09** 62:2,4

**1:21** 62:5,7

**2**

**2** 36:24 63:24 64:20

**2/1/2024** 46:18

**2/19/11** 78:25

**20** 61:24 111:14

**20-4** 15:15

**2003** 14:22 15:21

**2008** 18:21

**2009** 94:1

**2011** 32:19 36:11,19 37:22,25 48:4
  61:14

**2012** 36:10

**2015** 73:6 80:24 83:10

**2016** 81:9

**2017** 82:7

**2018** 64:2

**2019** 68:20,25

**2021** 82:18

**2022** 66:16

**2024** 47:16 48:13,17,20 49:3,6,9
  50:23 52:13 84:19 85:4,18 87:22
  88:7,20,22 93:5 94:9 95:6 96:19,25
  101:7,14 106:13,21

**2025** 6:2 27:19 50:24 88:22

**20C** 15:14

**22** 68:24

**233** 66:10,14

**237** 66:15

**26** 64:2

**263** 96:25

**264** 85:2 95:5

**27** 68:20

**274** 46:19,21

**277** 86:2

**278** 46:20,22 88:17

**28** 36:11 37:25 73:5

**28th** 37:22

**2:11** 107:19

**2:12** 108:7,8

**2:28** 108:9,11

**2:30** 111:4

**3**

**3** 26:18,19 32:1,4 52:13 63:24

**3.7** 15:8

**30** 14:22 15:21 105:14

**30-plus** 22:2

**30-second** 21:5

**301** 13:21 42:2

**361** 69:23 71:10

**362** 69:23 71:10

**363** 74:20

**364** 74:20

**379** 68:16

**380** 101:13

**385** 78:8

**386** 78:8

**387** 78:20 79:5

**4**

**4** 27:17 51:22 52:4

**4/13/2024** 89:6

**4/28/15** 70:5 83:4

**401** 17:23 18:25 20:2 24:23 25:19
  58:14 73:10

**403** 17:24 18:25 20:2 24:23 25:19
  58:14 73:10

**439** 79:20

**441** 80:22

**443** 81:7

**445** 81:13

**448** 82:14

**45** 27:11

**451** 83:2

**457** 33:10

**458** 34:3

**464** 33:10

**466** 83:23

**46902** 10:15

**46902-4411** 109:10

**490** 63:10,16

**5**

**5** 30:3,4 32:24 33:5,9 50:24 54:3,13
88:22

**6**

**6** 36:24 46:18,21 50:23 85:15,17
87:22 88:22 96:19,25

**600** 13:21

**64** 49:16,18 96:24

**65** 49:16 96:24

**66** 49:17,19

**6:19-cv-252** 57:7

**7**

**7** 49:15,18 50:1 101:7,14

**7/2024** 105:10

**70** 85:2

**71** 85:2

**76** 101:13

**77** 101:13

**8**

**8** 6:2 58:1 80:4 84:17,18 87:19,21
90:9 93:4 104:23

**8.4C** 15:4

**9**

**9** 84:19 85:4 91:5 93:5 95:5 96:16,18
104:24 106:13,21

**900** 13:22

**901** 14:14 33:19 41:2 47:7 50:6 55:13
64:9 67:6 75:17 78:3 79:9 83:9 98:2

**902** 14:14 33:19 41:3 47:7 50:6 64:10
67:6 75:17 78:3 79:10 83:9 98:2

**9th** 39:20 48:1 90:22

**A**

**abide** 8:21

**ability** 8:9 10:6 16:9

**absolutely** 50:25 72:4 74:10

**access** 80:9

**accordance** 14:13

**account** 33:13 36:8,19 37:13 40:8
42:18 43:22 46:9,12,15 47:18 48:7,18
50:22 54:4,11,21,22 55:7 56:3,12
58:8 59:25 66:15,18,20,22 68:20
70:4,18 76:3 79:21 81:1 85:19 87:22,
23,25 88:1,6,25 89:13 91:4 97:7
102:23 103:14,15 105:12

**accurate** 22:17 34:10 47:20 48:15
53:23 75:25 76:17 107:4,15

**accuse** 43:16

**acknowledge** 58:6 67:13

**acquiesce** 13:5

**act** 15:9

**acting** 35:1 58:5 77:20 94:21

**action** 18:2 19:3 20:5 25:1,22 31:11
58:18 73:15

**actions** 15:15

**actual** 54:9

**adding** 38:19 89:25 92:15 106:1

**address** 10:14 33:24 41:8 47:12
50:11 55:19 64:15 75:22 78:23 79:15
109:8,9,17

**administration** 18:16

**admissibility** 18:8 19:9 20:11 21:18
25:7 26:3 32:12 33:22 41:6 42:12
47:10 50:9 53:11 55:16 58:24 64:13
73:21 75:20 79:13

**admissible** 46:5

**admission** 15:23

**admit** 93:2,3

**admitted** 14:21 90:21

**Adobe** 36:1 51:5

**advocate** 14:25 15:9 35:4,10 43:1
78:1 91:25

**affidavit** 51:22 52:8,23 53:4 73:2
74:1 76:20 90:13

**affirm** 15:25 64:25 66:23 67:4,21
95:19 96:5,15 97:15 98:16 102:4
104:17 105:3 107:12

**affirmation** 97:21

**afforded** 13:17

**afternoon** 17:15

**agency** 97:10

**agent** 48:2 58:5

**agree** 21:9,21 41:24 42:18 43:18,23
48:9,12,14 55:1 56:5,9,10 58:6 68:10,
11 69:12 76:23 84:3 95:22 102:24
103:3

**agreed** 60:1 88:10 106:8

**agreeing** 72:4

**agreement** 54:12,21 55:1,7 56:3,12
57:7,15 58:5,9 59:22,23,25 60:14
70:5 106:7

**alleged** 36:13 37:2,19 57:11 59:23
90:17,18

**allegedly** 56:8

**allegiance** 16:3

**alleging** 60:19 92:23,24

**amount** 68:25 89:12 106:8

**and/or** 15:16 18:2 20:5 25:1,22 58:18

**ands** 37:13

**annual** 32:17,21 50:21 79:24 80:5
87:24 88:21 92:20,22

**answering** 67:18 68:6,13 74:12
93:21 96:10 99:3,12,22,24 100:1,3
104:4,20

**answers** 9:2 20:13 48:7 67:9 71:5
109:25

**Anthony** 57:4

**anticipated** 107:17

**apologize** 49:4

**apparently** 27:14

**appeared** 61:2

**appears** 27:21,23 30:8 34:5 35:23 37:1,19,21 52:14,21 61:3 64:21 69:5, 21 70:15 71:22 74:18 75:6 76:1 77:17,22 78:19 79:17 80:7 81:4,12,21 82:23 83:6 84:5,7

**applicable** 16:12

**application** 32:24 33:13 36:8 40:8 54:4,19,25 78:21

**applied** 36:18,20,23

**apply** 54:24

**approval** 48:6

**approximately** 6:3 7:23 17:12

**April** 27:19 73:5 83:10

**argumentative** 91:24

**arguments** 31:20

**arise** 14:1

**Article** 58:1

**assert** 13:16 60:2

**asserted** 102:9

**assertion** 53:22

**asserts** 15:2

**asset** 105:19

**assets** 105:16

**assist** 12:19 52:25

**assistance** 12:21

**assume** 9:25 62:21 64:4 83:20

**assumption** 48:25

**assurance** 45:4 69:17

**attend** 19:22

**attended** 22:5

**attesting** 53:21

**attorney** 6:11,16 14:20 16:8 23:2,5, 18,21 24:2 73:14

**Attorneys** 14:19

**August** 68:19,24

**authenticate** 22:12,22 34:9,16,18 35:21 38:9 43:5 51:14 71:25 76:10

**authenticated** 14:13 22:18 33:17 34:25 35:6,14 36:15 37:2 40:2 41:1,

20 43:4 44:19 46:4 47:5 50:4 51:3 55:12,22 56:6 60:21 64:8 67:7,19 69:10,16 71:19,23 72:7,16 73:7 75:15 76:1 79:8 87:15 92:10 95:12 98:1 107:14

**authenticates** 22:15

**authenticating** 22:10 35:8,13 76:16

**authentication** 12:12 13:23 14:10 21:20 22:8 38:5 42:11 43:25 67:16

**authenticity** 69:14 87:17

**authority** 16:6 37:13

**authorization** 54:12 70:5

**auto** 81:16

**aware** 32:16 47:17 48:18,20 83:10,15

## B

**back** 9:21 39:8 40:8 48:4 54:2,3 57:3 61:24 62:7 85:14 87:19 94:1 99:8 103:9 107:25 108:11,14

**bad** 30:4

**balance** 42:17 85:7,12 86:2,3,9,19 87:20,23,25 88:16 92:16 95:7 97:7 101:20 105:12,13

**ball** 23:13

**Bar** 14:22 15:23

**base** 91:9 97:18,21 102:19

**based** 27:12 44:16 51:1 57:14 69:8 104:18

**Bates** 33:9 46:19,21 49:16,18 63:9, 15 85:1 95:3

**bear** 16:3

**bearing** 13:4

**beginning** 75:9 77:3 86:1,2

**behalf** 6:9 59:6 70:18

**belief** 14:23 29:8 44:16

**believed** 15:22

**believes** 15:10,15

**beneficiary** 63:25

**bit** 54:13 68:18

**blank** 66:1

**blown** 54:12

**booklet** 8:16

**bottom** 52:10 58:2 70:4 78:25 83:3

**bound** 55:2

**breach** 57:11,16,17,22 60:2

**break** 61:21 62:15 107:22 108:15,16 109:22

**breakdown** 88:18

**bridge** 23:10

**briefly** 49:14

**bring** 27:16 88:8

**brought** 7:15

**burdensome** 14:8

**business** 18:14,15,17,18 24:13 25:17 26:7 82:2,4 97:5

## C

**call** 12:6

**called** 7:1 8:16

**Candy** 10:15 109:9

**capacity** 41:13 51:21

**care** 59:7 93:17 94:12

**case** 9:22 11:12 16:20 23:19,23 24:3 31:9 56:18 57:2,6,11 59:3,4,7,11,14, 16 60:7,12 108:17

**cash** 42:17 86:1,3,8 87:23,25 88:1,16 89:12

**catch** 19:19

**center** 81:16

**certification** 12:13 13:24 14:11 21:20 38:5 42:11 43:24 83:3,24

**certified** 14:13 34:25 36:15 37:2 40:2 43:3 44:18 46:3 51:3,20 55:22 56:6 67:20 69:10,16 71:18,23 72:6,15 75:25 87:15 92:9 95:11,20 98:1 107:14

**certifies** 22:15 41:19

**certify** 22:22 34:9 35:21 38:9 43:4 51:14

**certifying** 27:19 76:16

**challenge** 18:8 19:9 20:11 25:7 26:3 32:12 33:22 41:6 47:10 50:9 53:11 55:16 58:24 64:13 73:21 75:20 79:13

**Chandler** 81:21,23

**change** 69:20

**change/update** 64:1

**character** 29:20 31:14

**check** 65:12 79:20 80:3,10,23 81:7, 19 82:7,11,15,22

**checkbook** 80:10,17,20

**checks** 80:9 81:18 92:21

**circumstances** 30:10,20

**Civil** 13:18 14:7

**claim** 18:1 19:2 20:4 24:25 25:21 57:23 58:17 73:15 90:11 91:20

**claims** 40:6 60:11 102:9,20

**clarify** 16:15 30:2 67:12 104:22 109:7

**Clarke** 6:8

**cleanly** 9:6

**client** 35:7,9 37:14 38:8 42:12 44:3,9 51:19 55:23 56:8 59:5 60:23 66:25 67:8 69:15 71:24 72:7 76:15 77:19 83:1 96:7 97:22

**clients** 44:19,20

**close** 83:19,21 89:8

**closed** 82:5

**closing** 106:12,20

**collect** 39:2,4

**collection** 97:10

**column** 58:2

**comment** 62:24

**committed** 71:2 90:23 102:25 103:6, 7,9

**communication** 11:2

**Company** 24:8

**compel** 68:2 109:25

**complaint** 30:20 70:21 90:18

**complaints** 30:6,11

**complete** 39:21

**completely** 22:25 59:3 60:7

**composite** 40:9,11

**concede** 13:5

**conceding** 16:16

**concern** 12:5

**concerns** 22:7 84:12

**conditions** 54:24 55:2

**conduct** 12:14 15:1,4,5,8

**conferring** 58:10

**confident** 72:3

**confirm** 66:11 99:6

**confirmation** 38:13

**confirmed** 103:8

**confirming** 110:12

**confused** 88:10 92:8

**confusion** 18:4 19:5 20:7 25:3,24 58:20 73:18

**connection** 23:19,22 24:2

**considered** 109:23

**constitute** 15:17

**Constitution** 13:18 16:1,2

**construed** 58:10

**consulted** 23:18

**contacted** 39:8

**contained** 54:25

**contention** 70:16

**continue** 93:14 99:11

**contract** 57:17,20

**contrary** 45:6

**contravention** 78:2 83:8 98:1

**contribution** 68:25

**contributions** 85:22

**conversation** 74:1

**conversions** 85:23

**cooperate** 67:25

**copy** 54:19 56:15 57:1,10 59:24

**correct** 11:7 29:1 45:17,23,24 65:14 68:22 69:4 70:12,14 74:8 75:5,8 76:7, 8,11,12 80:6 97:14 105:4 106:23 109:11

**Correction** 75:3

**correctly** 31:12 54:8

**correspondence** 40:5

**counsel** 6:11,20 12:13,14 14:16,17 15:1 20:23 68:7

**country** 67:17

**couple** 21:13 53:15 65:17

**court** 6:23 8:10,12,22 9:5 10:15 15:10 17:5,9 26:20 27:13,15 29:19 38:20 57:13 60:3 61:10,15 68:12 78:5 104:2,8 108:25 109:3,9 110:16,20,23

**court's** 27:10

**cousin** 58:22

**crazy** 89:17

**create** 36:1 38:12

**created** 11:17 26:6 51:5

**cropped** 38:4

**cross** 23:10

**culminate** 19:24

**custodial** 54:20 55:7 56:2,12 59:25 60:14 106:7

**custodian** 105:15

**customer** 38:24

**cut** 61:4

**D**

**Dacres** 28:4,8,11 39:10 48:2 104:9 107:3

**Dacres'** 110:8

**damages** 51:23 52:8 53:5

**danger** 18:3 19:4 20:6 25:2,23 58:19 73:17

**date** 26:23 27:22 33:2 40:14 46:24 49:21 51:25 52:21 56:21 63:18 72:14 84:21 89:5 96:21 101:10,14 106:16

**dated** 36:10 68:24 70:3 78:10,25 79:22 80:23 82:16 84:2,19 85:3 96:19,25 101:7 106:13

**day** 67:17 99:20 111:13

**days** 65:18 97:8 105:14

**Dear** 97:4 105:11

**debate** 105:9

**decade** 70:17 71:1 91:3,23 93:11 94:3 99:8

**deceit** 15:6

**deceitful** 15:19

**December** 14:22 15:21 36:11,19 37:22,25 52:13 61:13 82:7

**deception** 12:14 15:13,18

**decide** 25:13

**decisions** 91:10

**defendant** 6:17 14:24 15:17 22:21
34:9 35:1 38:19 41:12 46:14 51:4
84:9

**defense** 18:1 19:2 20:4 24:25 25:21
58:17 73:15

**defined** 15:18

**degree** 18:12,20 19:18,25

**delay** 18:5 19:6 25:4,25 73:18

**delays** 20:8 58:21

**delivered** 90:15

**demonstrating** 45:8

**denial** 97:18,21

**denied** 57:13

**denies** 44:7

**deny** 27:25 34:7 36:17,20 41:23 42:6,
8 44:6 50:20 51:1,7,8 64:23 66:21
67:3,4,20 69:6,8,19 71:13,19 95:14,
17,19 96:3,14 98:13,15 100:12,13,16
102:2 104:11,16,18 105:1,3,5 107:11

**department** 65:13

**deposit** 68:17

**deposition** 6:4 7:16,17 8:15 13:11
14:2 16:25 35:12 39:9 43:9 62:16
63:12 67:12 104:8 108:18 110:8

**depositions** 67:16

**desk** 66:1

**developed** 47:22

**difference** 89:14

**difficulty** 9:18 10:9

**digital** 45:1

**Dinsmore** 12:7

**directed** 11:5 12:10

**direction** 69:24 71:9,14 73:4 78:9

**disagree** 23:9 34:22 68:8,11 90:6

**disclosure** 54:21,22,23

**disclosures** 26:20 27:10,14

**discovery** 14:6 29:3 30:14 31:17
44:21

**discuss** 63:4

**disgust** 29:17

**dishonesty** 15:6

**dispel** 37:10

**dispute** 52:16,18 92:19

**dissembling** 74:15 77:13

**distribute** 105:15

**distribution** 48:4 70:24 105:19
107:4

**distributions** 39:12 85:23

**District** 31:4 56:18 57:4,8 59:8

**docket** 27:11 61:11,15 70:21

**dockets** 17:8

**document** 27:1,5 31:25 33:6,14
34:10,14,18 35:5,25 36:14,24 37:3,20
38:6 40:17 47:2 50:1,13 51:17 52:5,7
54:20 55:21 56:4,7,13 63:8,15,25
64:4,17 67:5,14,21 69:7 72:2,15 73:4
76:11 77:19 79:18 81:6 82:25 83:8,
14,23 84:9 86:23 89:23 90:16 92:9,17
94:7 95:3,8,18,20 97:24 98:14,19
99:5 104:12

**documents** 13:24 14:12 16:19 21:21
41:19 42:13 43:25 61:10 65:4,7,10
66:10,12 70:18 84:14 87:14 90:19

**dozen** 92:21

**drive** 65:9,24

**due** 84:18 85:1,8,12 87:20 88:15 89:5
92:16 95:7 96:18,23 97:9 101:6,12,20
105:11 106:12,20

**duly** 7:2

**duties** 16:7 58:7

**duty** 57:12,17,22 60:3

**E**

**earlier** 78:23 107:7

**easier** 8:19 68:19

**Eastern** 6:3

**education** 17:21 18:11 19:16,23

**electronic** 16:19

**electronically** 11:3 26:22 27:18
33:1 40:13 46:23 49:20 51:24 56:20
63:17 84:20 96:20 101:9 106:15

**email** 39:19,25 48:2 65:18 90:20 91:5
107:2 110:12

**emails** 39:11,17 40:5 91:3

**embarrass** 14:9

**Emerald** 28:4,13,17 29:7

**employer** 78:21

**end** 89:2

**engaged** 14:23

**enter** 66:3,4

**entered** 16:11 32:9 53:7

**entertain** 45:2

**entertaining** 29:11 38:18

**errors** 109:19

**essentially** 8:1

**establish** 102:22

**established** 16:5 75:9 86:12

**event** 63:20 105:20

**evidence** 13:20 14:14 17:25 19:1
20:3 24:24 25:20 33:18 37:14 40:1
41:2,12 42:2 44:3,10,12,22,25 45:7,
10,12,13 46:4,14 47:6 50:5 54:10
55:13 58:15 60:24 64:9 66:25 67:6,22
73:11 75:16 76:14,15 78:3 79:9 83:9
91:14,19,22 92:18 93:1 94:13 96:8
97:22 98:2,5,18 99:4 100:25 102:5,14
103:4,5 105:7

**evidentiary** 93:23

**evidently** 39:5 89:11 92:12

**EXAMINATION** 7:4

**examined** 7:3

**exceeds** 14:5

**exhibit** 26:18,19 32:1,3,24 33:5,8,16,
25 40:9,10,11,25 41:8 46:18,21 47:4,
13 49:15,18 50:1,3,12 51:2,22 52:4
54:3 55:10,19 56:16,23 59:22 63:8,14
64:7,16 69:9 75:14,23 77:25 79:7,16
84:17,18 85:17 86:13,18 90:9 93:4
96:16,18 97:25 101:4,6 104:12,21,23,
24,25 106:11,12 107:13

**exhibits** 21:16 22:9 44:18 46:2

**exist** 32:7

**expedited** 110:15

**explain** 48:21 85:15

**explaining** 92:13

**extent** 19:20 48:9

**eye** 83:19

**F**

**fabricated** 38:4

**fabrication** 38:11

**fact** 21:18 34:20 44:24 63:6 87:10 96:2

**facts** 15:12 91:8 95:25 97:17,20

**factual** 34:6

**failed** 44:20

**Fair** 10:2

**faith** 16:3 23:17 103:7

**faithfully** 16:8

**fake** 51:5

**February** 96:19,25

**federal** 13:18,19 14:6,14 17:9,24 18:25 20:2 24:23 25:19 33:18 38:20 41:2 42:2 47:6 50:5 55:13 58:14 64:9 67:6 73:10 75:16 78:2 79:9 83:9 98:2

**fee** 32:18,21 39:6 50:22 54:22 79:24 80:5 82:17 87:25 88:19,21 89:3,9,18

**feel** 98:20

**fees** 23:22 24:2 50:23 81:1 88:20 89:1,5 92:20,22,24,25

**felt** 53:17

**fiduciary** 57:12,17,22 58:7,10 60:3

**field** 18:13

**filed** 27:15

**files** 17:1,3 65:11

**filings** 17:5

**filling** 36:7 64:3 71:8,13 75:11

**final** 101:6,12,17 104:12,15,25 105:10

**Financial** 32:19 36:25 37:6,11 61:17 103:16

**find** 24:14 25:12 30:14 31:3,18

**fine** 105:5 110:22

**finish** 9:9,11 35:16,19 43:12,13,14

**finished** 36:5,6

**finishing** 104:7

**firsthand** 15:11 31:5,10 92:3,4

**focusing** 57:22

**footprint** 45:1

**forging** 70:18 84:13

**form** 11:2 20:17 21:3 63:25 67:15 68:18 69:25 71:9,14 73:4 78:9,20

**formal** 19:16,23 21:23

**forward** 21:17 22:14 23:13 36:23 37:15,20 38:9 41:12 42:1 46:14 73:14 74:3 76:13,14 78:1 84:10 86:24 89:24 96:8

**found** 59:13 65:17

**frankly** 94:10 110:1

**fraud** 15:5 39:22 70:20 71:2 90:23 102:11,25 103:6,7,9

**fraudulent** 40:6

**frivolous** 38:20

**front** 11:12 16:19,21 28:1 40:1 95:3,8

**full** 19:20

**future** 8:17

**G**

**games** 99:10

**gave** 48:6 78:23

**general** 11:13,20 12:3,10 13:9,13 16:24 32:9 53:7

**give** 37:12 44:21 45:4 69:17 92:6 98:4 108:2

**giving** 92:7

**glad** 29:22

**Gloria** 28:19 29:7 107:6

**good** 7:12 23:17 30:4 88:18 92:13 103:6 105:5 108:4 110:24

**goofy** 92:11

**Google** 29:14,16 30:3 59:13

**governing** 13:22

**governments** 16:4

**granted** 57:13

**great** 23:6 57:24 77:10 78:6 104:10

**Greenberg** 6:16

**ground** 8:20 17:23 40:25 55:11 73:9 75:14

**grounds** 18:24 20:1 24:22 25:18 33:16 47:4 50:3 58:13 64:7 79:7

87:11

**group** 6:7,18,21 24:6,7,18 25:11,17 26:9,12,16 31:21,24 32:7,16 36:21,22 37:6 39:15,18 40:23 46:10 47:19,24 50:22 56:17 57:5 60:15 61:14,17 74:21 75:5,8 76:6 78:22 79:22,23 80:5,9,25 81:8,9 82:8,11,16 83:13 84:13 102:10 105:14

**guess** 81:20

**Guidant** 32:19 36:25 37:6,11,17 38:17 48:5,24 49:1,8 61:17 89:21 103:15

**guy** 88:12

**guys** 38:11

**H**

**half** 13:1 51:16,17 92:21

**handed** 73:1

**handle** 26:6

**handwriting** 64:20,22,24 65:1

**happen** 35:7

**happy** 9:20 50:17

**harass** 14:9

**head** 8:25

**hear** 9:15 95:15

**heard** 9:25 13:6 74:24 75:1

**hearing** 65:14

**heartburn** 59:16

**highest** 17:20 18:11

**highest-ranking** 73:2,25 76:19 90:14

**hocus-pocus** 103:2

**hold** 109:1

**holder** 79:21

**honestly** 20:23 49:10 65:8 88:11 106:6

**hope** 48:7 67:9 71:5

**hour** 17:12 61:25

**hours** 53:15

**hundred** 8:11 13:7 74:9 103:23

**hypothesize** 45:3,6

**hypothesizing** 44:14,15

**hypothetical** 73:13 76:18 95:15

**hypothetically** 72:18 73:1

**hypotheticals** 72:20

---

**I**

**ID** 14:20

**idea** 39:13 51:6 60:9 61:6,11 69:11 70:25 72:5,16 75:24 76:3 77:7 78:7 82:9 87:13 90:25

**identification** 28:3 78:21

**identified** 28:4 29:3,4

**impact** 10:6

**improper** 15:8

**in-house** 6:20

**in-kind** 39:11 48:3 70:23 107:3

**incapable** 72:4

**include** 65:10

**including** 13:20

**Indiana** 10:15 19:12,14 24:9 31:4 109:10

**indicating** 39:20 46:2 66:25

**individual** 33:13 36:8,18 78:24

**individuals** 10:25 30:6 31:14

**influence** 10:4

**information** 17:25 19:1 20:3 24:24 25:20 58:16 64:1 68:21 73:12

**insert** 21:15

**institution** 18:22 19:12

**instruct** 82:10

**intended** 14:8

**intention** 20:25 24:1 31:13

**interests** 26:7

**introduce** 6:12

**introduced** 26:21 32:25 40:12 46:22 49:19 51:19,23 56:19 63:16 70:20 84:20 96:20 101:8 106:14

**introduction** 33:16 40:25 47:4 50:3 55:10 64:7 75:14 79:7

**investment** 69:25 71:9,14 73:4 78:9

**invoice** 97:9

**invoices** 88:21

**involved** 68:12 104:2

**involvement** 15:3

**involving** 15:5

**IRA** 32:24 37:8 47:18,23 54:20,25 55:7 56:2,12 59:24 60:14 78:24 82:17 83:23

**irrelevant** 14:8 59:3 60:9

**IRS** 78:20 105:20,21

**issue** 15:12

**issues** 18:4 19:5 20:7 25:3,24 31:23 58:20 73:18

---

**J**

**January** 36:10 50:23,24 84:19 85:4 88:22 93:5,25 94:9 95:5

**JCM** 74:21,24 75:1

**Jersey** 14:19,21 15:4,14,23 16:2 39:7

**Jessica** 6:19

**JMC** 24:6,7,18 25:11,17 26:9,12,16 75:2,5,8 76:6 78:22 79:21 80:25 81:8, 14 82:16

**job** 8:19

**Joey** 6:5,25 13:12 68:21 69:1 70:8 73:5 78:14,24,25 79:25 81:2,10 97:4 105:11 111:10

**Jordan** 28:4,8,10 29:7 48:2 107:3

**Joshua** 6:8

**judge** 68:1 109:25

**judgment** 57:13

**July** 6:2 39:20 48:1,10,13,20 49:5 90:22 91:5 106:13,21

**jump** 24:12

**jumping** 27:6 99:7

**justly** 16:9

---

**K**

**Kari** 81:21,22

**key** 67:11 93:6

**Kimbrough** 6:5,6,25 7:7 13:12 20:15 22:24 34:12 35:11 43:9 47:2 50:15 52:3 54:6 57:10 61:1 62:10 63:21 65:5 67:24 68:21 69:1 70:8 73:5

78:14,24 79:1,25 81:2,10 90:17 91:12,16 93:13 94:19 97:5 99:2 100:4 102:8 104:7 105:11 108:15 109:22 111:2,10

**kind** 17:7 62:22 65:19

**kinds** 90:5 92:10

**knowing** 35:24

**knowledge** 15:11 17:16 28:18 29:9 30:10,19 31:6,10 38:7 39:16 53:24 62:20 80:19 82:12 92:3,5

**Kokomo** 10:15 109:10

---

**L**

**labeled** 33:9 46:19 49:16 95:3

**labels** 85:2

**language** 57:14

**late** 89:3

**law** 16:8 21:25 22:3,5 60:4 63:2 91:9 102:13

**lawsuit** 7:14 29:9 62:15,19 63:5

**lawsuits** 31:3

**lead** 105:19

**learn** 32:6

**leaving** 87:25

**legal** 21:24

**lengthy** 20:18

**lesson** 98:4,7

**letter** 106:13,20

**level** 17:20 18:11

**Lexitas** 6:9

**Liability** 24:8

**lie** 65:16

**likewise** 9:11

**limited** 13:20 24:8

**link** 63:13

**Lisa** 64:4

**litigated** 57:3

**LLC** 6:7 14:24 24:6,7,18 25:11 26:10, 12,16 31:21,24 56:17 57:5 74:22 75:5 76:7 78:22 79:22 80:25 81:14,15

**long** 12:22 17:10 99:20 107:25

**longer** 82:3

**looked** 17:1,8

**loses** 60:4

**lot** 30:15

**love** 31:22 40:4 45:2 74:2

**LSAT** 22:1

---

**M**

**made** 16:10 51:5 53:22 80:10,24 81:8 97:8

**magically** 91:5

**magistrate** 12:6 27:13

**mail** 109:13,15,17

**maintain** 43:21 54:6

**maintenance** 32:17 39:6

**make** 8:19 13:13 98:20 109:19

**making** 109:24 110:5

**manager** 76:2

**March** 101:7,14

**mark** 63:7

**marked** 52:3 84:17 104:12

**market** 54:22

**marriage** 62:25

**married** 62:23

**Master** 18:18

**master's** 18:12,13,14

**masters** 19:17,24

**math** 89:24 105:25

**matter** 6:5 60:4 103:13

**meaning** 76:9 88:25

**means** 15:19 60:25 68:12 96:3,13

**meant** 65:8,18

**medications** 10:5

**meeting** 11:1

**member** 24:19,21 75:7 76:6 77:2

**members** 26:8,11,14,15

**membership** 25:11

**memo** 79:24

**memory** 51:17 52:20

**met** 28:8,13,24

**Michael** 6:15 14:17 15:24

**mind** 13:4 20:23 65:19 77:4,5,8 108:23

**mine** 31:21

**minimum** 42:17 86:8,19

**minus** 106:2

**minute** 12:25

**minutes** 36:1 61:23 108:1,3

**misindication** 49:5

**misrepresentation** 15:6

**missing** 77:9

**mistaken** 22:25

**mistakenly** 49:2

**moment** 48:17

**money** 54:22 83:11,20

**Morales** 28:5,14,17

**morning** 12:18 110:21

**motion** 68:1 109:24 110:6,9 111:2

**mouth** 42:3

**move** 21:11 38:15 50:16

**moving** 66:8

---

**N**

**named** 48:2

**names** 29:21

**nature** 25:16

**needed** 24:5 53:2,17

**Nicolette** 108:22 110:13

**nodding** 8:24

**non-authenticated** 77:19 81:5 82:24 83:7 84:8 86:23 94:6

**non-certified** 67:7 77:18 81:5 82:24 83:7 84:8 86:22 94:6

**noncertified** 60:20

**nonsensical** 92:9

**Northern** 56:17 57:3,8 59:8

**Notary** 7:2 111:16

**note** 10:23

**notice** 12:13 14:15,17 56:24 84:18 85:1,3 86:19 90:8 93:5,6,25 94:5 95:6 96:18,23 97:1 99:7 100:25 101:7,12, 17,23 102:1,3 104:12,15,23,24 105:1, 10

**notices** 40:12,22 41:15,17 42:7,9 43:18 45:9 86:7 87:1 105:2,4

**notification** 50:21 85:1 96:24 97:14, 16 101:13

**notifications** 42:15 90:20

**November** 80:4,24 81:9

**number** 13:15 14:3,10,15 15:1,13,20 57:6 78:22 79:20 82:15 85:15 86:7 87:19,21,22 89:17 96:16

**numbered** 63:9

**numbers** 90:4 92:11

---

**O**

**oath** 8:7 12:15 15:20,23 16:11 32:10 35:5 42:21 53:8,21 62:12 77:14 94:20 100:9

**object** 14:4,11 17:22 20:17 21:2 42:8 53:6

**objected** 87:7,18 104:21

**objecting** 12:2 86:21 87:6 99:2

**objection** 11:13,16,18,20,23 12:4,10 13:4,13 16:24 18:7,9 19:8,10 20:10, 12,16,18 21:10 25:6,8 26:2,4 32:9,11, 14 33:21,23 34:23 38:14 41:5,7 42:10 43:3 44:17 46:1 47:9,11 50:8,10,16 51:1,12 53:7,10,13 55:15,17 58:23,25 64:12,14 68:14 69:9 71:17 73:20,22 75:19,21 79:12,14 81:6 87:12

**objections** 12:10,17,23 13:9,25 16:13 21:8,14 98:25 99:16

**objects** 17:23 18:24 20:1 24:22 25:18 32:8 33:15 40:24 47:3 50:2 55:9 58:13 64:6 73:9 75:13 79:6

**obligated** 8:7 43:15

**obligation** 43:21 98:10

**obtaining** 15:18

**offer** 50:14

**office** 12:15 15:20

**officer** 73:3 76:19 78:24 90:14

**official** 14:18 73:25

**ongoing** 63:6

**online** 30:12

**opposing** 14:16

**order** 8:19 13:2 26:20 27:10,13 79:23
102:13 104:8 110:13

**organization** 31:16

**organized** 24:9,11

**outfit** 39:7

**outlined** 14:6 29:17 59:17 94:5

**outstanding** 88:21 97:6

**outweighed** 18:3 19:4 20:6 25:2,23
58:19 73:16

**overdue** 93:4 95:6 97:1 101:17
104:13,15,24,25 105:1

**overturned** 38:21

**owe** 39:5

**owed** 89:15

**owing** 92:19

**owned** 81:15

**owner** 54:11 68:20 70:5 76:3

---

**P**

**p.m.** 6:3 62:2,4,5,7 108:8,9,11 111:4

**pacer** 31:2

**pages** 74:19 96:24

**paid** 23:21 79:22 87:25 88:19,20
89:1,2 105:13

**Palumbo** 56:16 57:5 60:1,10

**papers** 11:11 16:18

**paragraph** 54:17,18

**pardon** 89:11

**part** 11:4 31:17 32:3

**partially** 16:8

**party** 31:11

**passport** 107:18 108:19,21,24 109:8

**password** 66:3,5

**past** 60:22 61:24 84:18 85:1,8,12
87:20 95:7 96:18,23 97:9 101:6,12,20
105:11 106:12,20

**pasted** 61:5

**path** 99:11

**pay** 80:4

**paying** 24:1

**payment** 93:4 95:6 97:1,8 101:17
104:13,15,24,25 105:1

**payor** 81:1

**penalties** 105:21

**penalty** 74:4,7

**pending** 111:1

**people** 16:6 29:6,16 59:12

**percent** 8:11 13:7 68:4 74:9 94:14
99:14 100:20 102:11,17 103:23

**perfect** 40:21 109:4

**perform** 16:7

**performing** 58:4

**period** 50:23 88:22

**periodic** 46:8,12

**perjury** 74:4,7

**permitted** 15:10

**person** 9:7 11:4 76:9

**personal** 30:9,19

**pertaining** 16:20

**phrase** 31:5

**physically** 10:13

**picked** 56:25 57:9

**place** 38:25

**places** 14:16 90:5

**plaintiff** 13:12 14:16 15:2,10,15
17:23 18:6,10,24 19:7,11 20:1,9,13
24:22 25:5,9,18 26:1,5 32:8,10 33:15,
20,24 40:24 41:4,7 47:3,8,12 50:2,7,
11 53:9 55:9,14,18 57:11 58:13,22
59:1 64:6,11,15 73:9,19,23 75:13,18,
22 79:6,11,15

**plaintiff's** 14:22 26:19 27:9

**plan** 55:1 102:19

**planet** 76:10

**play** 72:19 99:10

**plenty** 103:5

**point** 9:15 10:21 49:6 67:24 77:11
105:10

**points** 16:16 67:12

**pose** 95:1

**position** 109:23

**Postal** 109:19

**potentially** 23:10 31:13 107:9

**precisely** 43:8

**prejudice** 18:4 19:5 20:7 25:3,24
58:20 73:17

**premarked** 26:18 33:5 46:17

**prepare** 12:16 16:25 52:22 53:17

**preparing** 12:20 16:23 53:4

**preponderance** 72:12 77:17

**present** 29:11 34:14

**presented** 93:1 102:6

**presenting** 55:21 92:4 93:22

**preservation** 12:11 13:15

**preserve** 16:12

**pressed** 59:4

**presumption** 41:25

**presumptions** 13:21

**pretyped** 11:16

**previously** 32:9 53:7

**principal** 10:14

**prior** 12:4 48:13 84:11 94:9

**privileges** 13:16

**pro** 17:7

**probative** 18:2 19:3 20:5 25:1,22
58:18 73:16

**problems** 109:16

**Procedure** 13:19 14:7

**proceed** 16:17 33:24 38:16 41:8
47:12 50:11 55:18 64:15 75:22 79:15

**proceeding** 11:4

**proceedings** 8:18 13:3 44:21

**proceeds** 13:12

**product** 29:18

**production** 63:8,15 65:4,7

**Professional** 15:4,8

**profusely** 49:4

**prohibits** 15:5

**promise** 22:23

**prompt** 66:2,4

**proof** 90:12 100:13

**proper** 42:10 46:1 68:14

**properly** 14:12 33:17 41:1 47:5 50:4
55:12 64:8 69:10 75:15 79:8

**Property** 24:6,7,18 25:11,17 26:9,12,
16 74:21 75:5,8 76:6 78:22 79:21
80:25 81:8 82:16

**protections** 16:13

**PROV** 33:9

**provide** 31:14

**provided** 26:21 32:25 40:13 45:12
46:23 49:20 51:24 56:19 63:17 84:20
96:20 97:22 101:8 106:14

**Provident** 6:6,17,21 7:14 14:24
29:18 30:7,11,21,24 31:15,20,23
32:7,16,21 33:9 34:3 35:14 36:9,19,
21,22 37:4,9 38:23,24,25 39:1,3,15,
18 40:3,23 43:19 45:9 46:9,19,21
47:18,24 48:7,19 49:1,2,16,18 50:22
52:10 56:17 57:5 60:15 61:14,16
63:9,15,24 64:20 65:4,7 69:23 70:17
71:10 73:3 74:20 78:8 79:20,23 80:5,
8,11,22,24 81:7,8,13 82:8,11,14,17
83:2,12 84:13 85:2,19 88:6 90:21
91:4,23 92:20 93:8 95:5 96:24
101:13,24 102:1,3,10 105:14

**Provident's** 63:8,14

**provider** 91:19

**Public** 7:2 111:16

**pull** 29:23 51:16 52:19 56:15 86:15

**pulling** 90:4

**purporting** 56:7

**purposefully** 74:15 77:12

**pursuant** 15:14 26:20 27:10 33:18
41:2 42:1 47:6 50:5 55:12 64:9 75:16
79:9 100:2

**push** 21:16 23:13

**pushed** 37:20 76:14 82:25 84:9

**pushing** 22:13 73:14 76:13 78:1
86:24 110:7

**put** 11:21 12:3,23 13:3 22:16 33:4
34:19 35:4 36:22 37:14 38:8,14 40:4,
7,9 41:12 42:10 43:2 44:17 46:1,14
49:14 54:3 60:23 74:3 84:16 87:9,10
96:7

**putting** 35:9 36:14 42:1,3 69:18
70:19 87:5,16 89:24 99:16

## Q

**Q1** 48:13,17 49:3,6 85:18 87:22

**quarter** 47:16 49:8 66:16 88:7 89:3

**question** 8:1 9:9,12,24 11:5 12:9
19:20 21:4,6,22 32:13 36:5,6 43:13,
14,15,16,17 45:20 48:8 53:12,15 56:1
67:2,10,19 68:14 71:6 72:8,9 74:16
77:1 91:12 94:25 95:1,2,13 96:11
98:22,23 100:5,16 103:20,22,24
104:20

**questioning** 14:5 54:8 74:13

**questions** 8:5,8 9:16,17 11:24 14:7
20:16 23:14 35:18 37:9 68:6 72:23
93:22 94:7 98:10 99:12,22

**quick** 24:14 69:22

**quicker** 50:17

**quickly** 21:11 27:4 40:20 66:9

## R

**raised** 84:12

**rating** 29:15,16,24,25 30:3,24

**rattling** 93:12

**read** 9:21 11:14 12:25 20:18 21:7,10
30:12 37:22 51:2,9,10 55:6 56:11
59:5 71:16

**read-on** 21:5

**reading** 55:5 56:2

**ready** 22:16

**reaffirming** 32:8 53:6

**real** 24:14 38:6,13 41:20 44:5,6,11,13
51:5 69:17,22 87:14

**realize** 66:8

**reason** 9:23 10:9 27:24 34:6 50:20
51:1 52:16,18 57:1,9

**recall** 7:21,22,25 17:13 28:12 31:1
32:22 37:18 41:10,16,22 43:6 44:2,9
45:19,23,25 46:8,11 47:14,21 50:13
53:3 55:24 56:2 60:13,16 64:3,17
65:3,6 66:17,19 69:12,13 80:18,21
84:15 86:6,13 97:16 100:17,24
101:25 103:18 104:14,19 106:25
107:5,10 109:18

**receive** 18:19,23 45:8,11,17,21 46:1
65:24 90:10 91:5 97:23 101:23
106:22 109:12,14

**received** 36:9 39:19,25 40:3 41:14,
17,22,23 44:2,22,24 45:13,19 46:11,
15 47:15 48:1 51:20 54:19 55:8 56:4,
13 60:24 66:19,24 67:22 86:7 90:13,
20 91:3,15,22 92:17 94:2 96:9 97:13,
15,18 98:19 99:5 100:14,17,24
101:25 102:4,7 103:18,19 104:14,19
105:2,4,7 106:25 107:2,12

**receiving** 19:23,25 39:17 42:6,9
45:23 46:8 51:7,8 60:13 65:3,6 66:17
95:14,17 96:4,5,14 98:13 100:12,16
102:2 104:11,16 107:11 109:17

**recess** 62:4 108:8

**recognize** 27:5 28:21 33:12 34:1
40:22 47:1 49:25 52:5 66:12 72:10,12
77:12 78:17 81:19

**recognized** 66:9

**recollection** 71:8,11 96:1,2,12
104:18

**record** 6:2 10:23 11:14,21 12:4,24
13:4,14 16:11 17:7 21:15 32:1,10
34:24 35:5 38:14 42:10 44:4,17 46:2
51:2 53:8 62:3,8 68:15 75:3 99:1,17
100:10 108:7,12 111:1,5

**records** 14:18 17:11

**referenced** 32:20

**referred** 97:9

**refuse** 67:25

**refusing** 92:6

**relate** 11:12

**relation** 24:17

**relevance** 12:12 14:4 25:12

**relevant** 18:1 19:2 20:4 24:25 25:14,
21 29:9 49:11 58:17 73:13

**remained** 88:25

**remanding** 38:20

**remember** 27:17 36:2,7,12,16 86:10,
11,18,21,24,25 87:3,5

**reminding** 42:16 43:20

**remote** 6:4

**remotely** 26:21 32:25 40:12 46:22
49:19 51:23 56:19 63:16 84:19 85:25
96:19 101:8 106:14

**repair** 81:16

**rephrase** 9:21

**reported** 80:16

KIMBROUGH
PROVIDENT TRUST GROUP

Case 6:24-cv-00342-JRS-MJD    Document 50-1    Filed 07/15/25    Page 42 of 44 PageID
#: 311

Joey Kimbrough
July 08, 2025

**reporter** 6:24 8:12,23 9:5 26:22 33:1 40:14 46:24 49:21 51:25 56:20 63:18 84:21 96:21 101:9 106:15 108:25 109:3 110:16,20,23

**represent** 6:13,17 7:13

**request** 50:19

**requested** 33:25 39:12,14,21,22 41:9 47:13 48:3 50:12 55:19 64:16 70:22,23 71:3 75:23 79:16 90:24 103:1 107:3

**requesting** 90:25

**require** 9:22

**required** 27:9 86:9

**requirement** 36:18 86:20

**requires** 102:13

**reservations** 13:10

**reserve** 33:21 53:10 55:15

**reserves** 18:7 19:8 20:10 25:6 26:2 32:11 41:5 47:9 50:8 58:23 64:12 73:20 75:19 79:12

**residence** 10:16

**resign** 105:15

**resolve** 97:6

**resolved** 105:13 110:9

**respect** 58:8

**respectfully** 22:25 68:8

**response** 99:21 103:21

**responsive** 110:2

**result** 19:17

**results** 21:16

**resumed** 62:5 108:9

**retirement** 33:13 36:8 83:11,20

**return** 107:17

**Reynolds** 6:19,20 23:1

**right-hand** 58:2

**rights** 12:11 13:10,16 16:12

**Roles** 14:19

**rolled** 83:12

**rollover** 83:2,24 85:22

**room** 10:18

**rough** 110:14

**roughly** 53:3

**Rule** 13:21 17:23 42:2 58:14 83:9 98:2

**rules** 8:20 13:18,19,22 14:6,14 15:4,7 17:24 18:25 19:1 20:2,3 24:23,24 25:19,20 33:18 41:2 47:6 50:5 55:13 58:15 64:9 67:6 73:10,11 75:16 79:9 98:4

## S

**safe** 28:23

**schedule** 54:23

**school** 21:25 22:4,6

**science** 18:17,18

**scope** 12:11 14:3,5

**screen** 22:17 35:9 51:18 63:21 69:18 87:9,11,16 109:1

**scroll** 33:11

**scrolling** 27:4 40:20

**search** 24:14 29:15

**searched** 31:2

**Secretary** 24:13

**section** 54:13 58:1

**secure** 63:13

**self-directed** 37:7 47:18,23

**send** 65:18 69:15 110:11

**sending** 39:11 92:22

**sentence** 54:18

**September** 64:2

**seq** 13:22,23

**series** 8:4 42:14 43:18

**served** 27:20 29:20

**Service** 109:19

**services** 58:4

**session** 8:2

**set** 63:13

**share** 46:17 63:11

**sharp** 89:11

**sharpest** 88:12

**short** 61:20

**shoulders** 8:25

**show** 26:17 27:8 46:15 52:2 57:14 68:5 90:13 106:6,10

**showing** 88:9,13,14 89:12 96:8

**shows** 36:25 85:20,21

**shrugging** 8:25

**sign** 37:4,16 38:22 52:12,20 53:21 55:23,24 56:8

**signatory** 107:6

**signature** 34:4,5,7,11 35:22,24 36:10,13 38:1,3 52:9 54:7,9,10 61:2,4,5,8,15 69:4,5 70:11,14,15 71:22 72:1,10,13 74:17 76:2 77:13,18,23 78:13,18,19 79:4,17 81:3,4,11,12,19 82:21,23 83:5,6 84:6,7 92:25

**signed** 32:19 36:25 37:7,12 45:1 48:5,24 59:6 60:17,19,23,25 61:18 69:1 72:14 73:5,8 78:25 79:25 80:3 81:2,10 83:3 90:15 101:1 102:6 103:8,15

**signing** 27:18 69:6 71:8,14

**similar** 31:19,21

**Similarly** 9:5

**simple** 29:14 51:9 72:9 74:16 87:10 100:5,8

**simply** 20:17 21:2 44:13 50:15

**single** 20:19

**sir** 21:24 22:6 25:14 35:2,10,16,25 36:6 37:5,23 43:13 47:15 51:6 60:12 62:25 65:17 67:3,11 70:16 71:12 72:8,23 78:5,18 81:3 82:22 83:5 84:23 90:6 93:10,17,18 94:9,10 95:25 96:11 98:3,7,17 99:5,18 105:10 107:16 110:1

**sit** 23:25

**situated** 31:19

**slip** 77:5

**slipped** 65:19 77:4,8

**Slocum** 6:14,15 7:5,8 14:17,20,23 15:11,16,21,24 23:11 26:24 33:3 34:20 37:19 40:15 43:7 46:25 49:22 52:1 56:22 61:20,23 62:9 63:19 73:14 84:22 90:5 92:3 96:22 99:12 101:11 102:22 103:19 106:17 107:21 108:2,13,22 109:6,21 110:5,11,18,22,25

**Slocum's** 15:3

**slowly** 27:4 40:20

**sole** 75:7 76:6

**solemnly** 15:24

**sort** 23:22 24:2 44:8

**sought** 17:25 19:1 20:3 24:24 25:20 58:16 73:12

**sounds** 110:24

**South** 10:15 109:9

**Southern** 31:4

**span** 42:15 43:19

**speak** 29:12 62:14 65:8 99:19,20 108:16

**speaking** 9:7

**specific** 57:1

**specifically** 14:11 17:3 31:10

**speculative** 30:16 95:15

**spend** 17:10

**spending** 21:1

**spent** 53:4

**spoken** 8:24 28:10,16,24 29:7 62:18

**SS4** 78:20

**stamped** 64:1 68:19

**stance** 32:7

**standing** 21:10 50:16 81:6

**start** 102:24

**starters** 94:20

**starting** 6:10 9:10,12 63:23

**starts** 58:3

**state** 15:14 16:2,6 24:9,13 63:1

**State's** 24:13

**stated** 34:19 71:15 77:16

**statement** 13:14 16:10 47:15 51:9 54:21 66:16,18,20,22 85:19 87:23 88:5

**statements** 46:9,12,16

**States** 13:17 16:1,5

**status** 58:10

**Statute** 15:14

**stolen** 80:17,20

**stop** 93:15

**stopped** 13:1

**straightforwardly** 98:11

**strike** 48:10

**stuff** 39:12 94:2 95:16

**stylized** 13:11

**subject** 32:13 33:23 41:7 47:11 50:10 53:12 55:17 64:14 75:21 79:14 104:8

**submission** 68:17

**subpoena** 30:13 31:13

**subpoenaing** 29:19

**Subscribed** 111:12

**subscription** 74:21 75:4

**Subsection** 58:1

**substances** 10:5

**substantially** 18:3 19:4 20:6 25:2,23 58:19 73:16

**sue** 38:25

**sued** 38:17

**sufficed** 20:17

**summary** 57:13

**support** 15:25 102:14

**surprise** 77:4

**suspect** 12:22

**swear** 6:24 15:25

**switch** 69:22

**sworn** 7:2 111:12

---

## T

**taking** 6:10 8:13

**talk** 31:22 76:20 87:17 103:10,12

**talked** 107:7

**talking** 21:17 35:17 39:14 63:1 94:8 98:7 99:21 102:24

**taxable** 105:20

**technical** 9:18

**telling** 34:17,24 43:5,11 44:1,16 51:15 52:20 71:21 72:13 76:24 77:22 91:21 92:8 95:23

**terms** 54:24 55:2

**testified** 7:3 45:16 48:16

**testifies** 104:9

**testify** 10:6 43:10,24 45:21,22 59:2 68:2 95:24 102:18

**testifying** 8:10 10:9,12 42:20 43:10, 16 45:18,25 68:4 74:7

**testimony** 22:11 31:15 41:15,18 91:13

**text** 107:20,24

**theft** 12:14 15:13,17

**thing** 45:15 102:21

**things** 9:1 23:8 34:21 68:9 95:16

**thinking** 29:18 30:13

**thought** 60:21

**threaten** 93:16

**threatening** 93:18 104:1

**threats** 40:6 93:17

**throwing** 51:18

**thrown** 89:17

**thumb** 65:9,24

**time** 6:3,23 7:21 9:7 17:6 20:19,20,22 21:1 22:1 24:20 32:15,18,20 37:25 48:1,19 53:4,16 54:1 57:21 62:1,6 72:14 101:2 103:11 108:6,10 111:3

**times** 7:20 37:8 72:12 77:17 109:20

**timing** 25:10

**today** 7:15 8:5,13 10:6,10,13 22:10 23:25 84:11 87:1,4 100:9

**told** 60:3

**tomorrow** 110:21

**tonight** 110:21

**top** 57:6 89:10

**tot** 99:10

**total** 88:20 89:5

**tough** 17:6

**traditional** 47:17,23 60:14

**training** 21:24

**transcript** 8:17 68:5 110:17

**transfer** 37:13 48:6

**Traurig** 6:16

**trial** 14:2 18:8 19:9 20:11 25:7 26:3 32:13 33:22 41:6 47:10 50:9 53:11 55:16 58:24 64:13 73:21 75:20 79:13

**trialed** 60:8

**trier** 91:8

**true** 16:3

**trust** 6:6,18,21 14:24 31:20,24 32:7,
16 36:9,21,22 39:18 40:23 46:9
47:19,24 50:22 56:17 57:5 60:15
61:14,17 73:3 79:23 80:5,8,25 81:9
82:8,11,17 83:12 84:13 85:19 88:6
92:1 102:10 105:14

**truthful** 53:23 94:11,14,15,18

**truthfully** 8:8 98:11

**Tuesday** 103:13

**tune** 31:8

**turn** 34:2 50:18 57:25

**two-page** 63:25

**type** 70:19

**typically** 109:15

**typing** 8:16

## U

**U.S.** 109:19

**uh-uh** 9:1

**unable** 71:25 102:18

**unauthenticated** 89:23 95:21

**uncertified** 89:22

**understand** 8:6 9:3,17,19 13:7
20:15,21 22:9 31:6 48:23 54:23 57:19
59:21 60:5,6 62:11,13 68:3 74:6
77:15 85:11 89:21 90:2 102:8,12

**understanding** 47:22

**understood** 9:25 31:12 46:6 53:20
54:7 59:6

**undue** 18:5 19:6 20:8 25:4,25 58:21
73:18

**unduly** 14:8

**unfair** 18:4 19:5 20:7 25:3,24 58:20
73:17

**United** 13:17 16:1,5

**University** 19:13

**unsure** 25:10

**update** 107:16

**upside** 69:21

**Urzia** 8:12

## V

**V-I-E-L** 28:20

**valid** 67:15 72:5 76:23 83:14

**validity** 72:3

**verbalized** 9:2

**versus** 6:6 57:5

**vice** 17:7

**video** 6:4

**Viel** 28:19,24

**violate** 15:3

**violation** 97:25

## W

**waive** 13:25 18:6 19:7 20:9 25:5 26:1
32:11 33:20 41:4 47:8 50:7 53:9
55:14 58:22 64:11 73:19 75:18 79:11

**wanted** 21:25

**Waterworks** 81:14

**week** 39:9

**weigh** 78:5

**Wesleyan** 19:13,14

**whomever** 60:10

**wife** 62:21 63:4 64:5 108:18,20

**wife's** 107:17

**wisenheimer** 99:8

**withstanding** 18:9 19:10 20:12 25:8
26:4 58:25 73:22

**witnesses** 13:22 28:3 29:8,20

**words** 8:24 42:3

**work** 67:17 98:5

**worked** 82:1

**works** 11:23 34:13 35:12 43:9

**world** 20:23 21:1 88:13

**write** 82:11

**writing** 81:17 82:7

**wrong** 23:1

## Y

**year** 39:20 51:15,17

**years** 7:24 22:2 42:16 43:20 57:3
82:5 86:8

**yesterday** 17:15

**York** 56:18 57:4,8 59:8

## Z

**zoom** 11:1 68:18